STATE v. ALVIN MED CHRISTOPHER.

(Filed 12 December 1962.)

**1. Criminal Law § 34—**

The general rule excluding evidence of defendant's guilt of other offenses is subject to the exception that proof of other offenses is competent when such proof tends to show *quo animo,* intent, design, guilty knowledge or make out the *res gestae,* or to exhibit a chain of circumstances with respect to the offense in issue, and is so connected with the offense charged as to throw light upon one or more of these questions.

**2. Same; Homicide § 14—**

The State contended that defendant killed deceased in a robbery to obtain money to pay a repair bill to get his car out of a garage, and evidence that defendant had stolen two automobiles on the night of the crime was admitted without objection. *Held:* The admission of that part of defendant's confession that a month before the killing he had stolen the car which was then in a garage for repairs was neither erroneous nor prejudicial in light of the facts of the case.

**3. Criminal Law § 162—**

The State's evidence tended to show that defendant killed deceased and robbed him to get money to pay a repair bill to get a car, which defendant had stolen, out of a garage. Evidence was admitted that defendant was apprehended and convicted of "improper registration" of a car. *Held:* Even though the evidence of defendant's conviction of "improper registration" may be technically incompetent, the admission of such evidence does not justify a new trial, since its admission could not have affected the result or prejudiced defendant.

**4. Criminal Law § 97—**

While the solicitor, in his argument to the jury, is not entitled to travel outside of the record, and should not be permitted to characterize

defendant in a manner calculated to prejudice the jury against him, wide latitude must be afforded counsel in the argument, and what constitutes abuse of this privilege must ordinarily be left to the sound discretion of the trial judge.

5. Same—

Argument of the solicitor that in light of the circumstances of the homicide the jury should not recommend life imprisonment *held* permissible under G.S. 15-176.1.

6. Homicide § 22—

Even though all the evidence tends to show murder committed in the perpetration of a robbery, it does not amount to prejudicial error that the court, in its preliminary statement upon the law of homicide, instructed the jury that the law of homicide in the case is divided into the three degrees of murder in the first degree, murder in the second degree, and manslaughter.

7. Criminal Law § 122—

The fact that the court, in stating the contentions of the State that defendant robbed and killed deceased, states also that the State contended that defendant "was a killer" will not be held for prejudicial error, no objections to the statement of the contentions having been brought to the court's attention in time to afford opportunity for correction.

8. Criminal Law § 114—

The fact that the court, after fully charging the jury that if the jury should find defendant guilty of murder in the first degree it had the unbridled discretion to recommend life imprisonment, further states that the jury had the right to recommend life imprisonment if the jury so desired, will not be held for prejudicial error.

Appeal by defendant from *Clarkson, J.,* 30 July Mixed Term 1962 of Catawba.

This is a criminal action tried upon a bill of indictment charging that on 29 April 1962 the defendant, Alvin M. Christopher, feloniously, wilfully, and with malice aforethought, did kill and murder one Ralph Eugene Frye.

The State's evidence tends to show that Ralph Eugene Frye was shot and killed at a service station where he was employed in Catawba County, North Carolina, on the morning of 29 April 1962. A deputy sheriff of Catawba County testified that he arrived at the service station about 3:30 or 4:00 a.m. on 29 April 1962 and found the body of Mr. Frye lying between the gas pumps and the service station. The defendant was arrested that afternoon in Marion, North Carolina, charged with the theft of the Oldsmobile he was driving and which he had stolen on 1 April 1962.

The defendant was interviewed at the headquarters of the Hickory Police Department, Hickory, North Carolina, by Lonnie Williams, an agent for the S.B.I., Detective Ed Groves of the Gaston County Rural Police, and Lt. M. T. Dellinger of the Hickory Police Department, on 1 May 1962. According to the State's evidence, the defendant told these officers that he was a member of the United States Marine Corps stationed at Camp Lejeune, North Carolina; that he lived on Propst Street in Gastonia; that he was home on a pass; that he had been operating an automobile about a month; that he had stolen the car in Marion on 1 April 1962 and had possession of the car until 28 April 1962 when he had trouble with it in Gastonia; that the generator gave out and he put it in a garage to have it repaired. When asked how he got the car out of the garage he stated that he paid for it. He was then asked where he got the money. He said he went by the garage on the night of 28 April 1962 to figure out some way to get his car; that he didn't have any money and the man at the garage watched him too closely and he couldn't get it. He said he went home then and went to bed; that he stayed in bed for a few minutes and got up; that he took a 22 caliber rifle that belonged to his mother and went into the eastern section of Gastonia and stole an Oldsmobile; that he drove this car a short ways until he saw a Ford station wagon. He parked the Oldsmobile and got into the station wagon and started toward Hickory. He was then asked why he was coming to Hickory and he said he was coming to hold up somebody and get some money; that he proceeded on to Hickory; that he went by a number of service stations that were open but didn't stop; that he went on by the fifth service station that was open, then made a "U" turn and came back to the station where he pulled in and stopped. He said there were three or four cars at the station and that he waited until some of the cars left; that there was one car that didn't leave, the man kept staying there and finally the man went into the service station. The defendant stated that in order to stall off the service station attendant, who was Mr. Frye, he asked him to check the different parts of the car, such as oil, the starter, and to wipe off the windshield; that as Mr. Frye was wiping off the windshield, the defendant said he removed the rifle which he had in the station wagon, put it up to the back of Mr. Frye's head, and said, "Don't move." At that time, he said, the service station attendant moved back and he shot him. He said the rifle made a muffled noise, it wasn't a loud noise, and that when he shot, Mr. Frye fell down and he didn't see him move. Defendant stated that he then jumped into the station wagon and started to leave and happened to think about the money; that he went back to the body of Mr. Frye, removed the money pouch, got back in the station wagon and pro-

ceeded in the direction of Conover; that when he got near the office of the State Highway Patrol he unloaded the empty shell from the rifle and reloaded it with a live shell. When the defendant got to Conover he said he turned right, going in the direction of Newton and that just outside or near the edge of the Newton city limits he threw the money pouch out the car window; that he traveled on to Gastonia, parked the station wagon where he had originally found it, got into the Oldsmobile which he had stolen in the eastern section of Gastonia, and was thereafter picked up by the Gastonia police and taken to police headquarters.

The owner of the Oldsmobile did not desire to prosecute the defendant but the police charged him with improper registration. Defendant stated that he got about $80.00 out of the money pouch he took from Mr. Frye and that he used part of the money to pay the fine for improper registration and also paid for having the car fixed, which he said was a stolen car he had in a garage in Gastonia. He further said that each time he would transfer from one car to the other he would take the rifle; that after he got the car out of the garage he carried the rifle back to his mother's home where he ate breakfast and then went to Marion where he was picked up by the police and charged with stealing the Oldsmobile on 1 April 1962.

The State offered evidence to the effect that the defendant offered to show the officers who interviewed him where he threw the money pouch or billfold that he took from the deceased, Ralph Eugene Frye. He did accompany several officers to the place where he said he threw the money pouch or billfold, and a billfold was found by the officers and identified by the defendant as being the one he took from Frye.

The question as to whether the statements made by the defendant to the above named officers on 1 May 1962 were voluntary was inquired into by the court in the absence of the jury, and the court found that the statements were voluntarily made, without any inducement or threats.

The jury returned a verdict of guilty of murder in the first degree. The sentence of death was imposed. The defendant appeals, assigning error.

*Attorney General Bruton, Asst. Attorney General McGalliard for the State.*

*Charles W. Gordon, Jr., for defendant.*

DENNY, C.J.,   The only exceptions and assignments of error brought forward and argued in the appellant's brief are as follows: (1) Those

STATE v. CHRISTOPHER.

challenging the admission of those parts of the defendant's confession which disclosed the commission of other offenses, to wit, the stealing of an automobile some thirty days prior, and that he had paid a fine for improper registration; (2) that the argument of the solicitor was improper and prejudicial to him; and (3) to certain portions of the court's charge to the jury.

Therefore, except as to those portions of the confession challenged as indicated above, the admission of the confession made to the officers by the defendant is unchallenged.

The automobile theft in question occurred about thirty days before the murder was committed. The State proceeded on the theory that the defendant killed the service station attendant in the perpetration of a robbery, the purpose of which was to obtain money with which to regain possession of the stolen automobile which was being held for the payment of certain repairs made thereon by a local garage in Gastonia.

In *S. v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853, Stacy, C.J., in considering the admission of evidence with respect to other crimes, said: " We start with the general rule that evidence of one offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other. *S. v. Choate*, 228 N.C. 491, 46 S.E. 2d 476; *S. v. Harris*, 223 N.C. 697, 28 S.E. 2d 232; *S. v. Smith*, 204 N.C. 638, 169 S.E. 230; *S. v. Deadmon*, 195 N.C. 705, 143 S.E. 514; *S. v. Dail*, 191 N.C. 231, 131 S.E. 573; *S. v. Miller*, 189 N.C. 695, 128 S.E. 1; *S. v. Graham*, 121 N.C. 623, 28 S.E. 537. The reason for the rule is to preserve to the accused, unencumbered by suggestion of other crimes, the common-law presumption of innocence which attaches upon his plea of 'not guilty,' and to protect him from the disadvantage of extraneous and surprise charges; also to confine the investigation to the offense charged. *S. v. Lyle*, 125 S.C. 406, 118 S.E. 803.

"To this general rule, however, there is the exception as well established as the rule itself, that proof of the commission of other like offenses is competent to show the *quo animo*, intent, design, guilty knowledge or *scienter*, or to make out the *res gestae*, or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. *S. v. Stancill*, 178 N.C. 683, 100 S.E. 241; *S. v. Beam*, 184 N.C. 730, 115 S.E. 176; *S. v. Choate*, *supra; S. v. Morris*, 84 N.C. 756; *S. v. Edwards*, 224 N.C. 527, 31 S.E. 2d 516; *S. v. Payne*, 213 N.C. 719, 197 S.E. 573; *S. v. Ferrell*, 205 N.C. 640, 172 S.E. 186; *S. v. Simons*, 178 N.C. 679, 100 S.E. 239; *S. v. Kent*, 5 N.D. 516, 69 N.W. 1052; Wigmore on Evidence (3rd), Vol. 2, Sec.

390; Note to *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286, as reported in 62 L.R.A. 193-357 (q.v.)."

In the instant case, there is no objection or challenge to the introduction of those portions of the confession relating to the theft of the two automobiles stolen by the defendant during the night of 28 April 1962 in connection with the execution of his plan to rob someone to get money with which to pay for the repairs on the car he had formerly stolen. Therefore, in our opinion, the admission of that portion of the confession relating to the theft of the Oldsmobile on 1 April 1962 in Marion, North Carolina, was neither erroneous nor prejudicial in light of the facts in this case. *S. v. Godwin,* 216 N.C. 49, 3 S.E. 2d 347; *S. v. Payne,* 213 N.C. 719, 197 S.E. 573; *S. v. Miller,* 189 N.C. 695, 128 S.E. 1.

With respect to the evidence relating to the charge of "improper registration," the rule seems to be, as set out in Strong's N. C. Index, Vol. 1, page 851, Criminal Law, section 162, as follows: "Where there is abundant evidence to support the main contentions of the State the admission of evidence of subordinate matters, even if such evidence is technically incompetent, will not justify a new trial when defendant does not make it appear that he was prejudiced thereby or that the admission of the evidence could have affected the result. * * *" These assignments of error are overruled.

Assignment of error No. 6 is based on exceptions to certain arguments made by the solicitor to the jury. The solicitor reviewed the evidence and argued with great zeal and fervor that in light of the defendant's conduct in connection with the killing of Ralph Eugene Frye, the punishment therefor should be death and that the jury should bring in a verdict of guilty of murder in the first degree without a recommendation that the punishment should be life imprisonment.

G.S 14-17 reads in pertinent part as follows: "A murder * * * which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's Prison, and the court shall so instruct the jury."

In 1961 the General Assembly adopted G.S. 15-176.1, which reads as follows: "In the trial of capital cases, the solicitor or other counsel appearing for the State may argue to the jury that a sentence of death should be imposed and that the jury should not recommend life imprisonment."

In this jurisdiction wide latitude is given to counsel in the argument of hotly contested cases. Moreover, what constitutes an abuse of

this privilege must ordinarily be left to the sound discretion of the trial judge. *S. v. Bowen,* 230 N.C. 710, 55 S.E. 2d 466. Counsel is not entitled to travel outside of the record and argue facts not included in the evidence. Neither should counsel characterize a defendant in a manner calculated to prejudice the jury against him. *S. v. Bowen, supra; S. v. Little,* 228 N.C. 417, 45 S.E. 2d 542; *Cuthrell v. Greene,* 229 N.C. 475, 50 S.E. 2d 525; *S. v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664; *S. v. Roberts,* 243 N.C. 619, 91 S.E. 2d 589; *S. v. Roach,* 248 N.C. 63, 102 S.E. 2d 413. We have carefully considered the portions of the solicitor's argument to which exceptions were entered and we hold that in light of the evidence in this case and the provisions of G.S. 15-176.1, the argument made by the solicitor was permissible. This assignment of error is overruled.

Assignment of error No. 9 challenges the correctness of the following portion of the charge: "Now, lady and gentlemen of the jury, the law of homicide in this case is divided into three degrees: murder in the first degree; murder in the second degree; and manslaughter. Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. Now, we are concerned here in the case at bar with the charge against the defendant of murder in the first degree."

The appellant concedes that it was proper for the court to charge only as to murder in the first degree, the murder having been committed in the perpetration of a robbery, but he contends that the trial judge committed error when he said, "the law of homicide in this case is divided into three degrees: murder in the first degree; murder in the second degree; and manslaughter." The court then defined murder in the first degree and informed the jury that the charge against the defendant was that of murder in the first degree. We cannot conceive that the charge as given was prejudicial to the defendant. There is no merit in this contention and the assignment of error is overruled.

In recounting the State's contentions, the court told the jury: "The State further says and contends that the defendant came to Hickory to rob somebody and did rob and kill Ralph Eugene Frye (and that the defendant is old enough to know right from wrong and that he was a killer, and that it was a calculated crime and that he left Gastonia for the purpose of going to Hickory to rob somebody and that it was a brutal murder and you should so find and convict him of murder in the first degree)."

Assignment of error No. 14 is directed to the use of the words, "and that he was a killer." We hold that the use of the above words in stating the contentions of the State was not prejudicial. Moreover, the rule with respect to the contentions given in a charge is stated in Strong's

N. C. Index, Vol. 1, page 792, Criminal Law, section 112, as follows: "Ordinarily a misstatement of the contentions of the parties, or objection that the court failed to give fully and accurately the contentions of defendant must be brought to the court's attention in apt time to afford opportunity for correction in order for an exception thereto to be considered on appeal." *S. v. Case,* 253 N.C. 130, 116 S.E. 2d 429; *S. v. Rhodes,* 252 N.C. 438, 113 S.E. 2d 917; *S. v. Stone,* 241 N.C. 294, 84 S.E. 2d 923.

The defendant further assigns as error the following portion of the charge. "You may for any reason and within your discretion, should you find the defendant guilty of murder in the first degree, add to that the recommendation, if you desire to do so, that the defendant be imprisoned for life, in which event that disposition will be made of the case."

Immediately prior to giving that portion of the charge set forth above, the court read the proviso contained in G.S. 14-17, and said: "Therefore, the court specifically instructs you, members of the jury, that it is patent that sole purpose of this Act is to give to the jury in all cases where a verdict of guilty of murder in the first degree shall have been reached the right to recommend that the punishment for the crime shall be imprisonment for life in the State's Prison. No conditions are attached to and no qualifications or limitations are imposed upon the right of you the jury to so recommend. It is an unbridled discretionary right and it is incumbent upon the court to so instruct the jury and the court does so instruct you."

Therefore, we hold that this assignment of error is without merit since the identical question was considered and a similar instruction was upheld in *S. v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684.

We have carefully examined the remaining assignments of error and in them we find no prejudicial error has been shown. We hold, therefore, that in the trial below there was no error in law.

No error.