## STATE v. JAMES EUGENE GLOVER.

(Filed 10 May, 1967.)

**1. Automobiles § 76—**

Knowledge by a motorist that he had struck a pedestrian is an essential element of the offense of failing to stop and give such pedestrian aid. G.S. 20-166(a)(c).

**2. Same—**

Testimony of a motorist that he had been drinking rather heavily, that, when he ran off the road in passing another vehicle with blinding lights, he looked up and saw a pedestrian in the vicinity of his truck or out in front of him, but that after he overturned he did not see the pedestrian, together with evidence that the pedestrian was seriously injured and that defendant fled the scene, *is held* sufficient to be submitted to the jury in a prosecution under G.S. 20-166(a)(c).

**3. Criminal Law §§ 85, 99—**

The introduction by the State of the testimony of a defendant which includes an exculpatory statement does not prevent the State from introducing other evidence tending to show the facts to be to the contrary in regard to the exculpatory statement, and on motion to nonsuit only the evidence favorable to the State will be considered.

**4. Criminal Law § 104—**

When the evidence is sufficient to overrule defendant's motions for nonsuit, the evidence is also sufficient to overrule defendant's motion for a directed verdict of not guilty, since the motions have the same legal effect.

APPEAL by defendant from *Armstrong, J.,* 16 January 1967 Criminal Session of GUILFORD (High Point Division).

Criminal prosecution upon an indictment charging defendant on 21 May 1966 with being the driver of an automobile involved in an accident resulting in injury to Willie Quick, and that after the accident· he unlawfully and feloniously failed immediately to stop the motor vehicle involved in the accident at the scene of the accident, and feloniously failed to give his name, address, operator's license number and the registration number of said motor vehicle to the said Willie Quick, and feloniously failed to render to the said Willie Quick, the person injured in the aforesaid accident, reasonable assistance, including the carrying of the said Willie Quick to a physician or surgeon for medical or surgical treatment when it was apparent that such treatment was necessary, a violation of G.S. 20-166(a), (c).

Defendant, who was represented by counsel, entered a plea of not guilty. Verdict: "Guilty as charged."

From a judgment of imprisonment for not less than eighteen nor more than twenty-four months, defendant appeals.

*Attorney General T. W. Bruton, Assistant Attorney General William W. Melvin and Staff Attorney T. Buie Costen for the State.*
*Morgan, Byerly, Post & Keziah for defendant appellant.*

PER CURIAM. The State introduced evidence. The defendant introduced no evidence. The record shows that when defendant rested he moved for a directed verdict of not guilty. The motion was overruled and the defendant excepted. Defendant assigns as error the court's denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence.

The State's evidence tends to show the following facts: About 8:45 P.M. on 21 May 1966, Willie Quick was walking on the shoulder of Underhill Street in High Point, North Carolina, towards town. There was no sidewalk there. The street is wide enough for two lanes of travel going in opposite directions. There had been a slight drizzle of rain. He was coming up the street and saw an automobile approaching. He turned around and kept walking down the street. The automobile was coming up behind him, and the next thing he knew he had been run over by this automobile and was lying in a ditch beside the street.

He was in a kind of daze. The automobile was up across the bank out in the field. His right arm was broken, his left leg was skinned up badly, his back was hurt and his lip was torn off and hanging out of his mouth. No one came and assisted him after the accident. After he got out of the ditch he was walking around there, an officer arrived, and he was carried in an ambulance to a hospital. Some-

time later he saw defendant at the hospital, but he does not rightly know how long that was after the accident. He does not know who was driving the automobile. The driver of the automobile did not come and give him his name and show him his automobile license and help to take him to the hospital.

About 8:50 P.M. on the same night, L. J. Boyd, an officer with the High Point Police Department, arrived at the scene of the accident. He observed a Chevrolet pickup truck sitting on the north side of Washington Street, off the road and on an embankment there, with debris, and a windshield and glass scattered around it. He found Willie Quick standing by the side of the pickup truck shaking his head. He had his lip cut completely off and it was hanging down below his chin. There was no one around the truck at the time other than Willie Quick. No one knew who was driving the truck. He called an ambulance and sent Willie Quick to the hospital. Later he went to the hospital to check on Willie Quick, and when he arrived there defendant Glover and one Jimmy Byers were being brought into the hospital by ambulance. Defendant stated in substance to L. J. Boyd that he was involved in an accident out on Washington Street; that it was raining, and he was not used to driving the truck; that he was meeting an oncoming car, he had tried to dim his lights, and as he was trying to dim his lights the truck ran off the road and hit the ditch; that he lost control of it and it turned over. He further stated in substance that as he ran off the road and looked up he saw a pedestrian in the vicinity of the front of his truck, or out in front of him, but after he overturned he did not see the pedestrian any more and he did not know that he had hit a pedestrian; that he got scared and left; that he had been drinking rather heavily; that he got Jimmy Byers, who was a passenger in the truck with him, and carried him from the scene on his back as far as he could carry him; he did not know where he had put him down, but remembered that it was between two houses; he continued on foot until he could not go any further, and then he walked up on the front porch of a house on East Street, knocked on the door, and when someone came to the door he fell over in the door. Defendant said he asked them to call an ambulance, which brought him to the hospital; and he did not have any driver's license. The officer testified that he saw defendant on East Street as the ambulance attendants were picking him up off the front porch on that street. That was roughly eight to ten blocks from the scene of the accident.

Defendant contends that he had no knowledge that he had struck Willie Quick with a motor vehicle and that Willie Quick had received any injury. Both reason and authorities declare that such

knowledge is an essential element of the crime created by the statute now under consideration, and charged in the indictment. *S. v. Ray,* 229 N.C. 40, 47 S.E. 2d 494.

The State offered in evidence the statement of the defendant that he had no knowledge that his vehicle had struck Willie Quick and no knowledge that Willie Quick received any injury. This statement does not prevent the State from showing that the facts and circumstances were different. *S. v. Phelps,* 242 N.C. 540, 89 S.E. 2d 132; *S. v. Simmons,* 240 N.C. 780, 83 S.E. 2d 904. The defendant's statement tends to exculpate the defendant, but the State does not rest entirely on such statement. Defendant also stated that as he ran off the road and looked up he saw a pedestrian in the vicinity of the front of his truck, or out in front of him, and after he overturned he did not see the pedestrian any more and did not know that he had hit a pedestrian. The testimony of Willie Quick is to the effect that he had been run over by a motor vehicle, and the next thing he knew he was lying in a ditch with his right arm broken, his left leg skinned up badly, his back hurt and his lip torn off. The totality of the State's evidence would permit a jury to find that just before the defendant turned over he saw a pedestrian in front of him, that he ran over this pedestrian and inflicted upon him serious injuries, that he must have known that he had been involved in an accident and had injured this person by striking him with his automobile. The evidence also shows defendant left the scene of the accident without any investigation as to whether a pedestrian had been injured, and without giving him any information or aid. In our opinion, and we so hold, while the State's evidence is conflicting — some tending to incriminate and some tending to exculpate him — considering the State's evidence in the light most favorable to it, and giving to it the benefit of every reasonable inference to be fairly drawn therefrom, the State's evidence reasonably conduces to the conclusion, as a fairly logical and legitimate deduction, that the defendant is guilty as charged, and it is sufficient to repel a motion for judgment of compulsory nonsuit, and was properly submitted to the jury. The State's evidence shows far more than a mere conjecture or suspicion of defendant's guilt. *S. v. Horner,* 248 N.C. 342, 103 S.E. 2d 694.

Defendant moved for a directed verdict of not guilty. This motion challenges the sufficiency of the evidence to go to the jury. *S. v. Wiley,* 242 N.C. 114, 86 S.E. 2d 913. ". . . (T)he objection that the evidence is not sufficient to carry the case to the jury . . . must be raised during the trial by a motion for a compulsory nonsuit under the statute now embodied in G.S. 15-173, or by a prayer for instruction to the jury." *S. v. Gaston,* 236 N.C. 499, 73 S.E. 2d

311. Under the circumstances here the motion for a directed verdict of not guilty and the assignment of error for the denial of his motion for judgment of compulsory nonsuit have the same legal effect, and the motion was properly denied, and the assignment of error is overruled.

The assignments of error to the charge of the court have been carefully examined, and no one of them is sufficiently prejudicial to justify disturbing the verdict and the judgment below. In the trial we find

No error.