STATE OF NORTH CAROLINA v. JOHN THOMAS ALFORD AND SHERMAN EUGENE CARTER

No. 4

(Filed 2 March 1976)

1. **Constitutional Law § 36; Homicide § 31— first degree murder — death penalty constitutional**

Imposition of the death penalty upon a conviction of first degree murder is constitutional.

2. **Jury § 7; Constitutional Law § 29— exclusion of blacks from jury — no prima facie case of systematic exclusion**

Defendants failed to make out a *prima facie* case of arbitrary or systematic exclusion of blacks from the jury where they showed

only that all prospective black jurors were peremptorily challenged by the district attorney and that both defendants were black.

3. **Criminal Law § 15— pretrial publicity — no change of venue**

The trial court did not abuse its discretion in denying defendants' motion for change of venue based on allegedly adverse pretrial publicity in the news media since, with the exception of the coverage of defendants' arrest, the articles complained of were of a very general nature and likely to be found in any jurisdiction to which the trial might be moved, the coverage of the arrest only indicated that defendants were charged with a crime but in no way intimated they were guilty, the record does not indicate that any prospective juror had read the newspaper articles or had seen or heard any other news releases pertaining to these cases, and nothing in the record shows that any juror had been influenced in any manner by the publicity.

4. **Homicide § 20— photographs of deceased — admissibility for corroboration**

The trial court in a first degree murder prosecution properly allowed into evidence two photographs of deceased for the purpose of corroborating the testimony of an expert witness who testified as to cause of death.

5. **Criminal Law § 66— pretrial lineup — in-court identifications of defendants based on observation at crime scene**

In-court identifications of defendants by four eyewitnesses to the crime were not tainted by a lineup which took place two weeks after the crime since the lineup consisted of young black males of approximately the same height and build, all similarly dressed, defendants were young black males, and there was no evidence of any suggestion on the part of police officers or any other person that would taint or color the identification of defendants; moreover, the trial court properly concluded that the in-court identifications of defendants were of independent origin based solely on what the witnesses saw at the scene of the crime.

6. **Searches and Seizures § 1; Homicide § 20— weapon in plain view — warrantless seizure — admissibility**

The trial court in a first degree murder and robbery prosecution properly allowed into evidence a weapon used in perpetration of the crimes where an officer burst into an apartment for the purpose of arresting an outlaw therein, when the officer entered he found the outlaw and defendant Alford, he knew that Alford and defendant Carter were wanted for murder and armed robbery, he was justified in arresting Alford and searching for Carter, and the officer was entitled to seize objects in plain view, including the weapon in question, which were connected with the defendants.

7. **Searches and Seizures § 1; Homicide § 20— cigarette lighter in plain view — warrantless seizure — admissibility**

The trial court in a first degree murder and armed robbery prosecution did not err in allowing into evidence a cigarette lighter identified by one of the robbery victims as being exactly like the one taken from him during the robbery, since the lighter was seized by an

officer as it lay in plain view in an apartment believed to be that of defendants and into which the officer entered with an arrest warrant for defendant Carter.

**8. Criminal Law § 34— cross-examination of defendant — question concerning prior offense proper**

The trial court in a first degree murder and armed robbery prosecution did not err in allowing the district attorney to ask one defendant if he stole guns which had been introduced into evidence, since there was ample evidence to justify the district attorney to ask the question in good faith.

**9. Criminal Law § 102— district attorney's jury argument — supported by evidence**

The district attorney's argument to the jury that the guns used in perpetration of the crimes charged had been stolen from a hardware store half a block away from defendants' apartment was supported by the evidence.

**10. Criminal Law § 102— district attorney's jury argument — propriety**

The district attorney's argument to the jury in a first degree murder and armed robbery prosecution was in substantial accord with the evidence, was not unduly prejudicial, and was permissible.

**11. Homicide § 21; Robbery § 4— first degree murder — armed robbery — auto parts store employees — sufficiency of evidence**

Evidence was sufficient for the jury in a first degree murder and armed robbery prosecution where such evidence tended to show that defendants entered an auto parts store at 3:00 p.m., four witnesses identified defendants as the two men who entered the store and committed the crimes, the men robbed the witnesses and emptied the cash register, and they shot at close range and killed a customer in the store.

**12. Criminal Law § 92— consolidation of cases of two defendants — prejudice to testifying defendant — benefit to nontestifying defendant**

The trial court committed prejudicial error in denying defendant Alford's motion for a separate trial where defendant Alford testified, declared his innocence and presented evidence of alibi; defendant Carter did not testify but had given a pretrial statement confessing his participation in the crime; the statement implicated one Larry Waddell in the crime but did not mention defendant Alford; the State did not offer the statement into evidence, not wishing to weaken its case against Alford; Alford did not call Carter as his witness since Carter could have refused to testify, relying on the Fifth Amendment to the U. S. Constitution, and Alford was thereby effectively deprived of evidence which would have corroborated his alibi testimony; and Carter benefited by the consolidation of the cases for trial as the State elected not to use his confession.

Justice HUSKINS dissenting.

State v. Alford

APPEAL by defendants under G.S. 7A-27(a) from *Thorn-burg, J.*, at the 1 April 1975 Criminal Session of MECKLENBURG Superior Court.

Defendants were charged in separate bills of indictment, proper in form, with murder in the first degree of Gregory Leonard. On pleas of not guilty, the cases were consolidated for trial over objection of defendants. The jury returned verdicts of guilty of first degree murder as to each defendant. Defendants appealed from judgments imposing sentences of death.

Evidence for the State tended to show the following: On 6 November 1974 around 3:00 p.m., Gregory Leonard, his wife and son stopped by Viking Imports Foreign Car Parts & Accessories, Inc. (Viking Imports), an auto parts store in Charlotte, North Carolina, to purchase some items for their car. Upon returning to his car and discovering that he had left one of his purchases on the counter, Mr. Leonard reentered the store. He was followed by two black men wearing green toboggans, subsequently identified by four employees of Viking Imports as defendants. Defendants, brandishing pistols, ordered the employees to "hit the floor," stating, "this is a holdup." As the employees stretched out on the floor, they heard a voice ask, "What for," and heard a shot. Defendants continued to threaten the employees with death if they moved or looked up. They then searched the employees' pockets, took their money, personal possessions, and emptied the cash register. Defendants, threatening death, next demanded to know where the safe was located, but were told that no safe existed. The employees were then forced into a bathroom while the defendants searched in vain for a safe and left. When the employees ventured out of the bathroom, they found Mr. Leonard dead of a gunshot wound, inflicted at a very close range.

Defendant Alford testified and offered evidence tending to show that he had been playing basketball with a group of friends from 1:30 p.m. until approximately 6:00 p.m. on 6 November 1974. Several witnesses testified to defendant Alford's good character.

Defendant Carter offered the testimony of his mother who only identified two pictures of defendant Carter.

Other facts necessary to decision are included in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas B. Wood for the State.*

*James L. Roberts for John Thomas Alford; and John G. Plumides for Sherman Eugene Carter, defendant appellants.*

MOORE, Justice.

[1]   Defendants first challenge the constitutionality of North Carolina's death penalty. Questions raised by this assignment of error have been considered and found to be without merit in *State v. Armstrong,* 287 N.C. 60, 212 S.E. 2d 894 (1975); *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335 (1975); *State v. Lowery,* 286 N.C. 698, 213 S.E. 2d 255 (1975); *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262 (1975); *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975); *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238 (1975); *State v. Lampkins,* 286 N.C. 497, 212 S.E. 2d 106 (1975); *State v. Avery,* 286 N.C. 459, 212 S.E. 2d 142 (1975); *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975); *State v. Sparks,* 285 N.C. 631, 207 S.E. 2d 712 (1974); *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974); *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6 (1974); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974). We adhere to those decisions.

[2]   Defendants next contend that their rights under the Fourteenth Amendment to the United States Constitution were violated by the systematic exclusion of blacks from the trial jury. In *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972), we said:

> "If the motion to quash alleges racial discrimination in the composition of the jury, the burden is upon the defendant to establish it. [Citations omitted.] . . .
>
> *         *         *
>
> "A person has no right to be indicted or tried by a jury of his own race or even to have a representative of his race on the jury. He does have the constitutional right to be tried by a jury from which members of his own race have not been systematically and arbitrarily excluded. [Citations omitted.]"

The basis for this assignment of error lies in the fact that all prospective black jurors were peremptorily challenged by

the district attorney, and that both defendants were blacks. There is no suggestion in the record that the district attorney had previously followed practices which prevented blacks from serving on the juries in his district. The United States Supreme Court has squarely ruled against the contentions here urged by defendants. In *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824 (1965), the Court, in part, stated:

". . . The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor thereby subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. . . .

\* \* \*

". . . But defendant must, to pose the issue, show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time. . . ."

Defendants have failed to make out a *prima facie* case of arbitrary or systematic exclusion of blacks from the jury. This assignment of error is overruled.

[3] Defendants moved for a change of venue under G.S. 15-135 (now G.S. 15A-957) due to adverse pretrial publicity in the news media. Defendants assign the denial of this motion as error. In support of the motion, defendants introduced as exhibits the following newspaper articles and television newscasts:

(1) A Tuesday, 11 March 1975, article in the Charlotte Observer discussing the trial of Larry Waddell for the murder of a dry cleaning store owner in which the widow's testimony accusing Waddell is recounted and in which Alford's name is mentioned as a defense witness and the fact that he was arrested with Waddell is noted.

(2) A Wednesday, 12 Marsh 1975, article in the Charlotte Observer which stated that Waddell, after conviction, fled the jurisdiction.

(3) A 17 March 1975 editorial by Tom Wicker in the Charlotte Observer discussing the popularity of the death penalty.

(4) A Channel 9 broadcast on 19 November 1974 showing the capture of Waddell who had been declared an outlaw and the arrest of defendants Carter and Alford who were found in the same apartment and other broadcasts carrying coverage of the crime.

(5) A general article in the Charlotte Observer discussing the toughening attitude of the North Carolina Senate toward armed robbery.

(6) A general article in the Charlotte Observer on 9 March 1975 discussing the effect of news publicity on the jurors' deliberations.

A motion for change of venue is addressed to the sound discretion of the trial judge and his ruling will not be overturned in the absence of an abuse of discretion. *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973); *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971); *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970); *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967). With the exception of the coverage of defendants' arrest, the articles are of a very general nature and likely to be found in any jurisdiction to which the trial might be moved. The coverage of the arrest only indicates that the defendants were charged with a crime. It in no way intimates that defendants were guilty. The record does not indicate that any prospective juror had read the newspaper articles or had seen or heard any other news releases pertaining to these cases. Nothing in the record shows that *any juror had been influenced in any manner by this publicity.* No abuse of discretion has been shown. This assignment is overruled.

[4] Dr. Hobard Wood, a medical expert qualified to testify as to the cause of death, testified that he examined the body of Gregory Leonard on 7 November 1974 and performed an autopsy thereon. He further testified that the deceased had died as a result of a gunshot wound in the upper right lateral chest area and that there was powder residue around the wound indicative of a very close range of fire possibly down to near contact or contact range. Dr. Wood then identified two photographs of the deceased, one as being the person upon whom he performed the autopsy, and the other showing the location of the wound. Upon the introduction of these photographs, the court instructed the jury that the photographs were admitted for the sole purpose of illustrating or explaining the testimony of the witness.

Defendant assigns as error the introduction of these photographs. We find no merit in this assignment. The photographs were admissible to illustrate and explain the testimony of Dr. Wood, they were properly authenticated, and the jury was properly instructed that they were admitted for the sole purpose of illustrating and explaining the testimony of the witness. They were competent for that purpose. *State v. Young,* 287 N.C. 377, 214 S.E. 2d 763 (1975) ; *State v. Crowder,* 285 N.C. 42, 203 S.E. 2d 38 (1974) ; *State v. Crews,* 284 N.C. 427, 201 S.E. 2d 840 (1974) ; *State v. Duncan,* 282 N.C. 412, 193 S.E. 2d 65 (1972) ; *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972), *rev'd as to death penalty,* 409 U.S. 1004, 34 L.Ed. 2d 295, 93 S.Ct. 453 (1972) ; *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971), *rev'd as to death penalty,* 408 U.S. 939, 33 L.Ed. 2d 762, 92 S.Ct. 2875 (1972).

[5] Defendants contend that the trial court erred in permitting the in-court identifications of defendants since such in-court identifications were tainted by and were the product of impermissibly suggestive lineup procedures. This lineup took place two weeks after the Viking Imports robbery. At that time four of the eyewitnesses identified Alford and two identified Carter. Defendants, relying on *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969), *cert. den.,* 396 U.S. 1024, 24 L.Ed. 2d 518, 90 S.Ct. 599 (1970), claim that the two-week delay in itself invalidates the identifications. *Rogers* does not invalidate any lineup that occurs two weeks after the crime, but simply considers the time lapse as one of the factors in determining whether the lineup was impermissibly suggestive. Here, the court found, after *voir dire* examination, that the lineup consisted of young black males of approximately the same height and build, all similarly dressed, and also found that there was no evidence of any suggestion on the part of the police officers or any other person that would taint or color the identification of the defendants. In addition to its approval of the lineup procedures, the court further concluded that the in-court identifications of the defendants were of independent origin, based solely on what the witnesses saw at Viking Imports on 6 November 1974. A brief review of the evidence fully supports this conclusion.

Johnny Rollins, one of the eyewitnesses, testified that the two men who came into Viking Imports on the afternoon of 6 November 1974 were defendants Carter and Alford. Carter had a .45-caliber pistol in his hand, and Alford had a smaller

blue steel weapon in his hand. Alford was standing ten to twelve feet in front of Rollins and Carter was standing directly in front of him. He observed Carter for a period of two to four seconds and had a full look at Carter's face.

Bruce Wells, another eyewitness, testified that he had known Carter three and a half years and had been in school with him at South Mecklenburg High School. He saw Carter walk in through the front door and Alford walk in behind him. When they entered, Wells was some ten feet from Alford. The lighting was very good, he had 20-20 vision, he was able to see Alford, who came as close as five or six feet to him, for about fifteen seconds, and he observed Carter for about ten seconds.

Another eyewitness, Wayne Paul Perkins, testified that he was standing behind the counter and saw Gregory Leonard come in followed by two black males, one of whom went to the right of him and one to the left in front of the counter and pulled pistols. One had a Colt .45 automatic, nickel-plated pistol and the other a small caliber black pistol. He identified Alford. He stated that the lighting conditions in Viking Imports were very good, his vision is 20-20, he was within ten to twelve feet from Alford and observed him from five-to-six or seven seconds.

Glenn Ray Hooks, another eyewitness, testified that he was working in the stockroom at Viking Imports on the date in question when Alford came over and stuck a gun in his face. Hooks stated he has good vision, the room was well lighted, he was within about one foot of Alford and observed him for several seconds.

Each of these witnesses testified that the identification of the defendants was based solely on what he saw at Viking Imports on 6 November 1974.

We hold that the trial court's findings as to the validity of the eyewitnesses' in-court identifications were amply supported by competent evidence and therefore conclusive on this Court. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283 (1972); *State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634 (1971). This assignment of error is overruled.

[6] Defendants objected to the introduction of State's Exhibit No. 2, a .45-caliber pistol identified as being in the hands of defendant Carter during the holdup, and State's Exhibit No. 3,

a 9 millimeter pistol identified as being in the hands of defendant Alford during the holdup and later determined to be the pistol which fired the fatal shot. These objections were overruled. Defendants assign this as error, contending that Officer Whiteside was unlawfully in the apartment where the weapons were found and the court erred in admitting evidence that was a product of an illegal search and seizure.

At the time Officer Whiteside went to an apartment leased to Deborah Dorothea Hasty on 19 November 1974, he knew that one Larry Waddell, charged with the capital crime of murder and a declared outlaw, was in this apartment. Under G.S. 15-48, an officer is empowered to take such power with him as he thinks fit and necessary for searching for and apprehending an outlaw. We hold then that when Officer Whiteside was informed that Larry Waddell was in the apartment in question he was well within his rights to burst into the apartment for the purpose of arresting Waddell. When he entered, he saw one individual who was identified as Waddell and another identified as Alford. Upon discovering Alford there and knowing that Alford and Carter were wanted for murder and armed robbery, he and the officers with him were justified in arresting Alford and searching for Carter. Officer Whiteside then went up the stairs where he observed Carter through an open door, coming out from between mattresses on a bed. At that time the 9 millimeter pistol was in plain view on a dresser. The seizure by the police of the pistol, which was in plain view during their search for Carter who, under the existing conditions, was aware of their presence and could use such weapon to make good his escape, was entirely justified. These facts are similar to those in *State v. Curry,* 288 N.C. 660, 675, 220 S.E. 2d 545, 555 (1975), where we stated:

> "Upon this record, the officers were lawfully in the Ronald Johnson house, having reason to believe that Bowles and Stevens might be therein. Under the circumstances, the seizure by the officers of these weapons in a house wherein men charged with first degree burglary and armed robbery might well have been hiding cannot be deemed unreasonable. The admission of the weapons in evidence and the overruling of the defendants' objection to the testimony of the State's ballistics expert witness concerning them cannot be deemed error."

We therefore hold that by being lawfully on the premises the officers were entitled to seize such evidentiary objects connected with these defendants as were in plain view. *State v. Allen,* 282 N.C. 503, 194 S.E. 2d 9 (1973); *State v. Simmons,* 278 N.C. 468, 180 S.E. 2d 97 (1971); *State v. Hill,* 278 N.C. 365, 180 S.E. 2d 21 (1971); *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753 (1970); *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970).

There is also no merit in the assignment of error concerning the introduction of the .45 automatic pistol. This pistol was found as the result of a search under a valid search warrant in the room in which Carter had previously been arrested.

[7] Defendants also object to the introduction of a cigarette lighter, identified by one of the robbery victims as being exactly like the one taken from him during the robbery, on the ground that it was illegally seized. This cigarette lighter was found on the day following the robbery during a search of an apartment believed to be the apartment of defendants. Armed with an arrest warrant for defendant Carter, Officer Hamlin went to this apartment and knocked at the door. The door was partially open and Officer Hamlin went in looking for Carter. When he first entered, he saw a cigarette lighter on a couch in the living room. Officer Hamlin did not search for evidence but left the premises after he determined that defendant Carter was not in the apartment. This lighter was in plain view as he entered the premises with the lawful arrest warrant for Carter. ". . . The law does not prohibit a seizure without a warrant by an officer in the discharge of his official duties where the article seized is in plain view. [Citations omitted.] . . ." *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968); *State v. Allen, supra; State v. Simmons,* 278 N.C. 468, 180 S.E. 2d 97 (1971); *State v. Hill, supra; State v. McCloud, supra; State v. Virgil, supra.* This assignment is overruled.

[8] Defendants contend the court erred in allowing the district attorney to ask Alford if he stole the guns, which had been introduced into evidence, from Builders Hardware. There is no merit to this contention. The evidence discloses that two of the pistols found in the apartment where defendants were arrested had in fact been stolen from Builders Hardware and that this place of business was just across the street from the apartment where defendants were living.

---

· State v. Alford

---

Although a defendant may not be asked if he has been accused, arrested, or indicted for a particular crime, *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971), he may be asked if he in fact committed a crime. As we said in *Williams:*

> "It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. *State v. Patterson*, 24 N.C. 346 (1842); *State v. Davidson*, 67 N.C. 119 (1872); *State v. Ross*, 275 N.C. 550, 553, 169 S.E. 2d 875, 878 (1969). Such questions relate to matters *within the knowledge of the witness*, not to accusations of any kind made by others. We do not undertake here to mark the limits of such cross-examination except to say generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith."

*See also State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972); *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874 (1972).

Here, there was ample evidence to justify the district attorney in good faith to ask Alford if he had stolen the pistols. This assignment is overruled.

[9] By their tenth assignment of error, defendants contend that the court erred "in permitting the District Attorney to refer in his argument to the jury to evidence that was not in the record, and in permitting him to use language that was calculated to arouse passions of the jury." Specifically, defendants object to the statement of the district attorney to the jury that "there has been the evidence come out that the two guns were stolen from Builders Hardware. The two defendants lived half a block away." Officer Whiteside testified that the two weapons in question, the Colt .45 and the 9 millimeter caliber pistol, were new weapons belonging to Builders Hardware and were taken from Builders Hardware in a robbery on 21 October 1974. The evidence further disclosed that the apartment at 137 South Irwin Street, where defendants lived, was across the street from Builders Hardware. Obviously, the district attorney's argument was based on evidence introduced at the trial.

**[10]** Defendants further assign the following portion of the district attorney's argument to the jury as error:

". . . I want you to think, what kind of a man and what kind of men, could walk into a store and within thirty seconds of walking into a store, could walk up to a person that they had never seen before and blow his heart out while his wife and his child sat in an automobile outside the door. Here's a twenty-four year old boy lying on the ground with blood running out of his mouth, and these two here with guns in their hands, walking around to the men who are in that store and taking a pistol, one by one, and holding it to their heads and saying, 'Look at me, m——— f———. I want to kill you.' By G———, if that doesn't make your blood run cold, I can't stand it. I'm in here speaking for that man out there, that preacher whose boy was lying on that floor dead, and these two walking around the room holding their guns on these people, telling them, 'I'm going to kill you. I want to kill you,' and at the same time they had already killed one man."

In this jurisdiction, wide latitude is given to counsel in the argument of contested cases. Moreover, what constitutes an abuse of this privilege must ordinarily be left to the sound discretion of the trial judge. *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970), *rev'd as to death penalty*, 403 U.S. 948, 29 L.Ed. 2d 860, 21 S.Ct. 2290 (1971); *State v. Christopher*, 258 N.C. 249, 128 S.E. 2d 667 (1962); *State v. Bowen*, 230 N.C. 710, 55 S.E. 2d 466 (1949). Ordinarily, exceptions to improper remarks of counsel during argument must be taken before verdict. *State v. Noell, supra; State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970); *State v. Hawley*, 229 N.C. 167, 48 S.E. 2d 35 (1948); *State v. Tyson*, 133 N.C. 692, 45 S.E. 838 (1903). Such exceptions, like those to the admission of incompetent evidence, must be made in apt time or else be lost. This general rule has been modified in recent years so that it does not apply to death cases where the argument of counsel is so prejudicial to defendant that the prejudicial effect of such argument could not have been removed from the jurors' minds by any instruction the trial judge might have given. *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970); *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967); *State v. Dockery*, 238 N.C. 222, 77 S.E. 2d 664 (1953). In instant case, no objections were made to the district attorney's remarks during the course of the trial

but exceptions were entered after verdict. After careful review, we hold that the argument made by the district attorney was in substantial accord with the evidence, was not unduly prejudicial, and was permissible. This assignment of error is overruled.

[11]  Defendants next assign as error the court's refusal to allow the defendants' motion for nonsuit at the close of the State's evidence, and the court's refusal to grant a motion for a directed verdict of not guilty. A motion for a directed verdict of not guilty and a motion for nonsuit challenge the sufficiency of the evidence to go to the jury. *State v. Wiley,* 242 N.C. 114, 86 S.E. 2d 913 (1955). Under the circumstances here, the motion for a directed verdict of not guilty and the motion for judgment of compulsory nonsuit have the same legal effect. *State v. Glover,* 270 N.C. 319, 154 S.E. 2d 305 (1967). Upon such motions, the court must find that there is "substantial evidence . . . both that an offense charged . . . has been committed and that the defendant committed it," before it can overrule the motions. *State v. Cutler,* 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967). *See State v. Morgan,* 268 N.C. 214, 150 S.E. 2d 377 (1966); *State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654 (1966). In deciding this question, the trial judge must consider the State's evidence in the light most favorable to the State without considering the evidence of defendant in conflict therewith. Eyewitnesses positively identified the defendants as the two men who participated in the robbery and the killing of Mr. Leonard. Alford offered evidence tending to show that he did not participate in the robbery or in the murder and, in fact, was not present at Viking Imports on this occasion. It is for the jury to determine the truth and credibility of the evidence. *State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973); *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968); *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741 (1967). This assignment is overruled.

[12]  Finally, Alford assigns as error the denial of his motion for a separate trial. Alford concedes that ordinarily such motions lie within the sound discretion of the trial judge. In *State v. King,* 287 N.C. 645, 215 S.E. 2d 540 (1975), defendants were charged in separate bills of indictment with first degree murder. There we said:

　　" . . . Under such circumstances, the trial judge was authorized by G.S. 15-152 (repealed by Sess. Laws 1973, c. 1286, s. 26, effective July 1, 1975) in his discretion to

order their consolidation for trial. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972) ; *State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406 (1966) ; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965) ; *State v. Morrow,* 262 N.C. 592, 138 S.E. 2d 245 (1964)."

Alford contends, however, that the defenses of the defendants in this case were antagonistic. Alford testified as a witness, declaring his innocence and claiming an alibi, in support of which he offered several other witnesses. Evidence of his good character and lack of any serious criminal record was also introduced.

Carter, on the other hand, elected to remain silent and vigorously cross-examined Alford's alibi witnesses. Carter's reason for remaining silent is apparent when his pretrial statement to the officers is read, a copy of which was attached to Alford's motion for a severance and is as follows:

"I, Sherman Eugene Carter, am 18 years of age and my address is 415 Wood. . . . Pl, Charlotte, N. C. I have been advised and duly warned by Ronald T. Guerette, who has identified himself as Charlotte City Policeman, of my right to the advice of counsel before making any statement, and that I do not have to make any statement at all, nor incriminate myself in any manner.

"I hearby expressly waive my right to the advice of counsel, and voluntarily make the following statement to the aforesaid person, knowing that any statement I make may be used against me at the trial or trials for the offense or offenses concerning which the following statement is herein made.

"I declare that the following statement is made of my own free will without promise or hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

"He (Larry Waddell) picked me up and asked me to go with him. This was the afternoon that we went to the Viking Auto Parts on Morehead. He was walking at this time. This was at the corner of Tuckasagee & Walnut. We walked to the Viking Auto Parts, and he told me 'Let's go rob a place.' He had the gun in his pants and he gave it to

me. Before we went in, he gave me a .45 automatic. I had not seen the gun before that. He had the other gun. The black gun. We went into the store at the same time. He said 'Freeze, don't anybody move.' And I went to the cash register by running around the counter. I got the money out of the cash register. It was open I think. Larry took the wallets and watches from the people. I came from around the counter and passed Larry and as I got to the door I heard a pop. I left running and Larry was behind me. We ran down Cedar towards the tracks and then down the tracks, towards Summit. We stopped on Summit to divide the money. We threw the wallets in the bushes as we ran down ~~Summit~~ the tracks. I went to the Club on Trade (Big Brothers). About 2 or 3 mins. later a friend told me someone got killed and that the police were looking for me. That night I saw Larry over at a friends house. I asked him did he do it, did you kill the man and he would not say nothing. Since this day I have not been able to forget it. It bothered me because a man was killed. All I've got to say is I'm sorry.

"I Sherman is very sorry that it had to happen. And if I had to do it over again I would not do it.

"I have read this statement consisting of 2 page(s), and I affirm to the truth and accuracy of the facts contained therein.

"This statement was completed at 1:00 A.M., on the 20 day of November, 1974.

s/ SHERMAN EUGENE CARTER
Signature of Person giving
voluntary statement"

Carter did not take the stand and the State did not offer the statement in evidence, relying on other evidence of Carter's participation in the crimes and apparently not wishing to weaken its case against Alford. Neither did Alford attempt to introduce the statement. Under these circumstances, Alford could have called Carter as his witness but Carter could have refused to testify, relying on his rights under the Fifth Amendment to the United States Constitution. Hence, Alford was effectively deprived of evidence which would have corroborated his alibi testimony. Carter, on the other hand, benefited by the consolidation of the cases for trial as the State elected not to

use his statement. Under these circumstances, we believe Alford was entitled to a separate trial. As Justice Sharp (later Chief Justice) said in *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968) :

> " . . . [W]hether defendants jointly indicted would be tried jointly or separately was in the sound discretion of the trial court, *and, in the absence of a showing that a joint trial had deprived the movant of a fair trial,* the exercise of the court's discretion would not be disturbed upon appeal. [Citations omitted.] . . . " (Emphasis added.)

We believe Alford has made such showing in the present case.

In *Chambers v. Mississippi,* 410 U.S. 284, 35 L.Ed. 2d 297, 93 S.Ct. 1038 (1973), the Supreme Court of the United States was faced with a similar situation. In that case, defendant Chambers called one McDonald to introduce that witness's written confession to the crime for which Chambers was standing trial. However, on cross-examination by the State, McDonald repudiated the confession and asserted an alibi. Chambers' subsequent attempt to cross-examine McDonald as an adverse witness, with regard to the confession and alibi and other oral confessions made by McDonald, was denied by the trial court on the basis of the Mississippi rule that a party may not impeach his own witness. The trial court also excluded as inadmissible hearsay evidence the testimony of three other witnesses offered by defendant as to oral confessions allegedly made to each of them by McDonald shortly after the murder for which Chambers was being tried. The Court, in an opinion by Mr. Justice Powell, concluded that the combined effect of these two evidentiary rules violated Chambers' due process right to a fair trial, including the right of confrontation guaranteed under the Sixth Amendment. The Court reaffirmed that "few rights are more fundamental than that of an accused to present witnesses in his own defense," and that the right of cross-examination and confrontation are vital to the "accuracy of the truth-determining process." Specifically, the Court held that the trial court erred in excluding the hearsay statements by McDonald because enough assurances of trustworthiness existed in the circumstances surrounding the statements and in the fact that McDonald was present and available for cross-examination by the State.

In *Truman v. Wainwright,* 514 F. 2d 150 (5th Cir. 1975), a case involving motions for a separate trial, the Court held

that "due process is violated when a defendant is 'effectively prevented from exploring' his accusation that another person committed the crime for which he stands accused." In *Maness v. Wainright*, 512 F. 2d 88 (5th Cir. 1975), a case involving similar motions, the Court concluded that on the basis of *Chambers* the question that must be asked in these cases is whether defendant's defense was "less persuasive" to such a degree that we must conclude that his right to a fair trial was violated.

Unquestionably, in instant case, there was substantial evidence against Alford, including his identification by four eyewitnesses. However, there is no doubt that his alibi defense was "less persuasive" than it would have been had it been strengthened by the introduction of Carter's statement or testimony. Under the circumstances of the joint trial, Alford was precluded from introducing this statement or this testimony. Now that Carter has been convicted, Alford can call him as a witness. If Carter then attempts to deny his confession or refuses to testify, the situation as discussed in *Chambers* arises and Alford can proceed as suggested in that case. We therefore hold that his defense was so prejudiced as to amount to a denial of due process and his right of confrontation. *Truman v. Wainwright, supra; Maness v. Wainwright, supra.* By reason of the denial of his motion for a separate trial, Alford is entitled to a new trial.

A careful review of the record leads us to these conclusions:

1. Alford is entitled to a new trial and it is so ordered.

2. In the trial of Carter, we find no error.

Justice HUSKINS dissenting.

Analysis of the decisions cited in the majority opinion leads me to conclude that defendant Alford's conviction should be upheld.

In awarding defendant Alford a new trial, the majority rely primarily on *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed. 2d 297, 93 S.Ct. 1038 (1973). In that case, defendant was convicted of murdering a policeman who was killed in the aftermath of a barroom brawl involving a sizeable crowd. After Chambers' arrest, one McDonald confessed to the crime. At Chambers' trial, the State was able to produce little hard evi-

dence of defendant's guilt, and Chambers' defense depended in large part on being able to show that McDonald had shot the policeman. When the State failed to call McDonald, defendant called him for the defense and introduced McDonald's confession. On cross-examination by the State, McDonald repudiated his previous confession as having been part of a scheme by one Stokes to obtain Chambers' release, whereupon they would all share in the proceeds of a lawsuit Chambers would bring against the city. The State "voucher" rule prevented Chambers from impeaching McDonald, since Chambers had called McDonald as his own witness. The trial court also excluded the proffered testimony of three different witnesses who would have testified that McDonald had admitted to them that it was he, not Chambers, who shot the policeman. Exclusion was based on the ground that these out-of-court confessions violated the hearsay rule. The United States Supreme Court held that the combined effect of these two State evidentiary rules prevented Chambers from introducing testimony which strongly implicated McDonald, rather than Chambers, as the murderer, and that this "denied [Chambers] a trial in accord with traditional and fundamental standards of due process."

I do not question the soundness of the legal principles enunciated in *Chambers*. I do, however, disagree with the majority's application of *Chambers* to the case at bar. The holding of the United States Supreme Court in *Chambers* was closely tied to the particular facts of that case—facts which were, in my opinion, sufficiently different from those in the instant case to remove it from the ambit of *Chambers*. In *Chambers*, as the Supreme Court emphasized, the State's case against defendant was very weak. Defendant called a witness who had earlier confessed to the crime with which defendant was charged, and when this witness repudiated his prior confession, defendant tried, but was not permitted, to impeach the witness with his earlier statement. This having failed, defendant nevertheless persisted, again unsuccessfully, in his efforts to bring before the jury the fact that the repudiating witness had previously confessed not only to the police, but to three other persons as well.

In the instant case, as the majority concedes, there was "substantial evidence against Alford, including his identification by four eyewitnesses." Moreover, defendant at no time sought to call Carter as a witness, nor did he offer as evidence Carter's

written confession which tended to implicate one Larry Waddell as the second perpetrator of the robbery-murder. Unlike *Chambers,* there is no way of knowing what would have transpired had Alford called Carter or sought to introduce his prior confession. Thus, in its present posture, this case, unlike *Chambers,* is not one in which *"the [trial] court . . . excluded evidence that strongly pointed the finger of guilt at [another] while the evidence against [defendant] was minimal." Maness v. Wainwright,* 512 F. 2d 88 (5th Cir. 1975) (emphasis added). Nor is it a case, again unlike *Chambers,* "where *the court prohibited* the defense from making a plausible argument that someone else committed the crime, or where *a serious and continued effort by the defense* to get its theory of the case before the jury was frustrated." *Truman v. Wainwright,* 514 F. 2d 150 (5th Cir. 1975) (emphasis added). Actually, in both of these 5th Circuit cases the court held *Chambers* inapplicable on the facts there involved.

In view of the strength of the State's case against defendant Alford, and absent any attempt by him to call the confessing witness to testify or introduce into evidence the confession itself, I cannot read *Chambers* so broadly as to be dispositive of this case.

For the reasons stated, I respectfully dissent from that portion of the majority opinion awarding defendant Alford a new trial. I vote to affirm.