STATE OF NORTH CAROLINA v. JAMES W. SHELTON

No. 8121SC6

(Filed 15 September 1981)

**1. Criminal Law § 161.2— form of exceptions and assignments of error**

Under Appellate Rule 28(b)(3) failure to refer to the assignments of error or exceptions following the statement of the questions presented could result in abandonment of all of appellant's questions on appeal and consequently result in dismissal of the appeal.

**2. Criminal Law § 91— speedy trial—codefendant's request for continuance—tolls time limit for defendant's trial**

Where defendant was indicted for armed robbery and assault and tried on those charges 140 days after the date of the indictment, he was not denied his statutory right to a speedy trial as the period of delay caused by a codefendant's request for continuance to receive a psychiatric examination is excluded when computing defendant's, as well as the codefendant's, statutorily prescribed time limit for trial. G.S. 15A-701(b)(1)(a); G.S. 15A-701(b)(6).

**3. Criminal Law § 158— evidence omitted—presumption as to finding**

When evidence upon which the trial court based its findings is not in the record there is a presumption that there was sufficient evidence to support the findings and they are conclusive on appeal.

**4. Constitutional Law §§ 50, 53— speedy trial—failure to assert right**

Where defendant failed to object to a consolidation of his case with that of his codefendant and further failed to object to codefendant's request for a continuance, more was needed to show a valid effort to assert his right to a speedy trial than a motion to dismiss made seven days prior to trial.

**5. Constitutional Law § 52— speedy trial—death of potential witness—failure to show prejudice**

Where defendant alleges that, due to the delay in his trial, he was prejudiced by the death of a potential witness, but he failed to include in the record an indication of what the witness's testimony would have been, it is impossible for the Court to say what prejudice, if any, was caused by the unavailability of the witness.

**6. Criminal Law § 111.1— court's instructions to prospective jurors—no improper reference to indictments**

The trial court can, as directed by G.S. 15A-1213, refer to and summarize an indictment when explaining to the jury the circumstances under which the defendant is being tried.

**7. Constitutional Law § 29; Jury § 7.1— exclusion of blacks from jury—no prima facie case of systematic exclusion**

Defendants failed to make out a prima facie case of arbitrary or systematic exclusion of blacks from the jury where they showed eight of the State's eleven challenges were of black jurors and the petit jury was all white.

**8. Criminal Law § 66.14— illegal pretiral confrontation—in-court identification not tainted**

A robbery victim's in-court identification of defendant was of independent origin and, thus, was not tainted by possible unduly suggestive pretrial identification procedures where the witness testified the defendant stayed in his store approximately five minutes, was not wearing anything over his face or head, the lighting was good, he had no trouble seeing his face, he "gave them a good look," and he had "no doubt" in his mind that the defendant was the one who had robbed and assaulted him.

**9. Criminal Law § 93— testimony concerning exhibit—chain of custody not established**

The trial court did not err in allowing an SBI employee to testify about blood samples found on a lamp before the chain of custody for the lamp, identified as the dangerous weapon, had been established. The trial court may permit introduction of evidence that depends for its admissibility upon some preliminary showing which has not yet been made upon counsel's assurance that such showing will be made later.

**10. Assault and Battery § 5.2— sufficiency of evidence to show deadly weapon utilized—circumstantial evidence**

Circumstantial evidence that the victim received a "terrific blow to the head" which knocked him out; that when he regained consciousness he saw a bloodied lamp lying at his feet; that the lamp had been directly beside defendant when defendant was standing next to the victim; and that evidence of blood comparisons made by the SBI showed that the blood on the lamp was consistent with that of the victim and inconsistent with that of defendant is sufficient evidence to create a reasonable inference that defendant struck the victim on the head with the lamp.

**11. Criminal Law § 42.4— introduction of physical object into evidence—relevancy**

The court did not err in allowing a ball peen hammer into evidence where testimony was unclear as to what sort of weapon, if any, was used to knock out the victim, and the jury could possibly have inferred from the evidence that the victim was struck with the hammer.

**12. Constitutional Law § 68; Criminal Law § 97.2— no constitutional right to have case reopened—judge's discretion**

There is no constitutional right on behalf of defendant to have his case reopened. The decision to reopen a case and hear further evidence is within the trial court's discretion. G.S. 15A-1226(b).

APPEAL by defendant from *Wood, Judge.* Judgment entered 14 August 1980. Heard in the Court of Appeals 29 April 1981.

Defendant was charged by indictments returned on 24 March 1980 with the crimes of armed robbery and assault with a deadly weapon inflicting serious bodily injury. He pled not guilty to these charges, was tried, and convicted of the crimes charged.

The state presented evidence which tended to show the following: At the time these crimes were committed Mr. Wade Swaim owned and operated Flynt's Television Shop in Kernersville, North Carolina. At approximately 3:55 p.m. on 11 December 1979 Mr. Swaim was alone at his place of business. Defendant and one Jerry Gaither entered the store. Defendant approached Mr. Swaim and asked him to change a dollar bill. All the while, Gaither remained close by the entrance to the store. Mr. Swaim handed defendant change for the dollar, and suddenly defendant hit Mr. Swaim on the side of his head with his fist, stunning him. Then both defendant and Gaither hit Mr. Swaim, knocking him to the floor. They continued to beat Mr. Swaim while he lay on the floor, and they took his billfold which contained $150. While he was lying on the floor semiconscious he heard one of the robbers repeatedly saying "open the cash register." Suddenly, Mr. Swaim felt a "terrific blow" to his head which knocked him out. When he came to he saw that his cash register had been tampered with and that his workbench lamp was lying on the floor at his feet with blood on it. Defendant allegedly ran from the store, was apprehended and brought back to the store within a short while. Before being taken from his store to the hospital, Mr. Swaim identified defendant as the man who had just assaulted and robbed him.

Defendant testified in his own behalf. His statements tended to show that on 11 December 1979 he, Gaither and Rodgers Jackson met in Winston-Salem. Defendant and Gaither rode around with Jackson to "get high." They drove over to Kernersville. Defendant and Gaither entered Swaim's store, and defendant testified that Gaither, rather than he, got a dollar's change from Mr. Swaim. Defendant testified that he saw Gaither knock Mr. Swaim to the floor and then Gaither hit and kicked Mr. Swaim. Defendant rushed over, grabbed Gaither, and pulled him off Mr. Swaim. Mr. Swaim then grabbed defendant by the leg. Defendant pushed Mr. Swaim away, and he and Gaither ran from the store. Defendant declared that he did not strike Mr. Swaim, and that he did not see Gaither hit Mr. Swaim with the lamp or any weapon.

The jury rendered its verdicts finding defendant guilty of both crimes as charged in the indictments. The trial court entered separate judgments sentencing defendant to concurrent terms of

imprisonment of 16 to 20 years on the armed robbery charge and 10 years on the assault charge. Defendant (hereinafter appellant) appealed from from the entry of the judgments.

*Attorney General Edmisten, by Assistant Attorney General George W. Lennon, for the state.*

*Nancy S. Mundorf for defendant appellant.*

MORRIS, Chief Judge.

[1] Appellant has disregarded the mandatory requirements of Rule 28(b)(3), N. C. Rules of Appellate Procedure. That rule specifies:

> Immediately following each question [contained in appellant's brief] shall be a reference to the assignments of error and exceptions pertinent to the question, identified by their numbers and by the pages of the printed record on appeal at which they appear. Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.

Appellant's brief contains no reference to the assignments of error or exceptions following the statement of the question to which they pertain. Under Rule 28(b)(3) we could deem all of appellant's questions to have been abandoned and consequently dismiss his appeal. However, to prevent any injustice to this appellant, especially, considering his terms of imprisonment, we will suspend the requirements of Rule 28(b)(3) as authorized by Rule 2, N. C. Rules of Appellate Procedure, and consider appellant's arguments.

[2] Appellant submits that his statutorily and constitutionally guaranteed right to a speedy trial was disregarded. The record reveals that appellant was arrested on 13 December 1979 for the commission of the crimes of which he was convicted. He was charged by indictment with these crimes on 24 March 1980. The case came to trial on 11 August 1980. On 4 August 1980 appellant made a motion to dismiss based on the ground that he had not received a speedy trial. Subsequently, the trial court denied this motion.

G.S. 15A-701(a1) requires that an individual charged with a crime be brought to trial on those charges within 120 days from

the date he is arrested or indicted, whichever occurs last. Appellant's trial did not begin until 140 days after his indictment. However, G.S. 15A-701(b) provides that certain time periods be excluded from the time within which the trial of the criminal offense must begin. G.S. 15A-701(b)(6) provides for the exclusion of "[a] period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." G.S. 15A-701(b)(1)(a) provides for the exclusion from the computation of the time period of delays resulting from "[a] mental or physical examination of the defendant, or a hearing on his mental or physical incapacity." In his order concerning appellant's motion to dismiss for failure to receive a speedy trial entered 11 August 1980, Judge Wood found that the cases of appellant and his two codefendants came on for trial on 9 June 1980, at which time Judge Rousseau allowed the state's motion to consolidate their cases for trial. On 9 June 1980, following Judge Rousseau's order of consolidation, defendant Gaither made a motion for a psychiatric examination to determine his competency to stand trial and a motion for continuance until 21 July 1980 to afford time for the examination. Judge Rousseau allowed Gaither's motion. The state's subsequent motion that appellant and the third defendant's cases also be continued until 21 July 1980 so that all three could be tried simultaneously was likewise granted.

In his order, Judge Wood excluded from the computation of the length of time from indictment to trial, the time period from 9 June 1980 until 21 July 1980 during which the case was continued so that defendant Gaither could be examined. This left a total of 98 days from the date of indictment until the date of trial which was well within the statutorily prescribed limit. Appellant contends that this exclusion under G.S. 15A-701(b)(1)(a) should not have been made applicable to him, but rather should have been applied solely to defendant Gaither.

Appellant's analysis overlooks G.S. 15A-701(b)(6). The continuance resulting from the mental exam did pertain only to defendant Gaither. Even overlooking the fact that appellant's case was also continued for the same period, under G.S. 15A-701(b)(6) appellant's statutory right was not violated because the time for trial of codefendant Gaither had not run due to the continuance

for his mental exam. Appellant's case was consolidated with Gaither's so appellant's statutory rights were not violated.

[3] Appellant contends that error resulted from the fact that Judge Rousseau's order consolidating and joining appellant and his codefendants' cases for trial did not appear in the record. In fact, defendant contends that the record shows that no written motion for consolidation was ever filed by the prosecutor's office as required. Therefore, appellant asserts that there was insufficient basis for Judge Wood's findings in his order of 11 August 1980 in which he determined that the speedy trial act had not been violated with regard to appellant. Specifically, he argues that G.S. 15A-701(b)(6) could not be used as a basis for Judge Wood's order, because no order of consolidation of the cases appears in the record.

The better practice would have been to place in the record the motions and orders upon which the trial court based its order denying appellant's motion to dismiss. This Court must rely exclusively upon the record on appeal. When the evidence upon which the trial court based its findings is not in the record this Court will presume that there was sufficient evidence to support the findings of fact necessary to support the trial court's order, and those findings are conclusive on appeal. *Town of Mount Olive v. Price*, 20 N.C. App. 302, 201 S.E. 2d 362 (1973). The only evidence appearing in the record of the case *sub judice* with regard to the motion and order to consolidate appellant and defendant's cases were the findings of Judge Rousseau's order. We are bound by those findings, and we accept their veracity. Hence, we find that there was no violation of appellant's statutory right to a speedy trial.

Nor do we think that appellant's constitutional right to a speedy trial was violated. The factors to be considered in determining whether an accused has been denied his constitutional right to a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant resulting from delay. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972); *State v. Hill*, 287 N.C. 207, 214 S.E. 2d 67 (1975).

The burden is on an accused who asserts denial of his constitutional right to a speedy trial to show that the delay was

due to the neglect or willfulness of the prosecution (citations omitted).

*State v. Tann*, 302 N.C. 89, 94, 273 S.E. 2d 720, 724 (1981). Appellant has not carried this burden.

Approximately 140 days elapsed from the date of appellant's indictment on 24 March 1980 until the date of his trial on 11 August 1980. In the recent case of *State v. Hartman*, 49 N.C. App. 83, 270 S.E. 2d 609 (1980), this Court held that 319 days, standing alone, was insufficient time to constitute unreasonable and prejudicial delay. Similarly, we think under the facts of this case 140 days was insufficient time to show prejudicial delay.

[4] Portions of the delay occurred by reason of codefendant Gaither's continuance of the case so that he might have a mental exam. Although this delay was not directly attributable to appellant, the record does not indicate that he objected to the continuance or moved for a severance of his case from that of Gaither. The consolidated cases were continued as a result of defendant Gaither's and the state's motions to continue until 21 July 1980. Judge Wood in his order of 11 August 1980 stated that there was no criminal session of court in Forsyth County for the week of 21 July 1980, and the cases subsequently came to trial on 11 August 1980. Appellant has shown no cause for the delay directly attributable to the actions of the prosecution.

The record does not reveal that appellant effectively asserted his right to a speedy trial during this lapse of time. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo*, supra, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed. 2d at 118. On 4 August 1980, just prior to his trial on 11 August appellant made his motion to dismiss for lack of speedy trial. Something more is needed to show a valid effort to assert this right.

[5] Appellant alleges that he was prejudiced by the delay due to the death during the interim of a potential witness. It is impossible for us to say what prejudice, if any, was caused by the unavailability of this witness. We do not know what his testimony would have been.

Balancing all of these factors, we think it clear that appellant has failed to show that the delay was undue, prejudicial, or due to

the willfulness or neglect of the state. Therefore, we hold that appellant was not denied his constitutional right to a speedy trial and the trial court's denial of his motion to dismiss on that basis was not in error.

[6] Before the jurors were called from the *venire* the appellant made a motion for mistrial on the grounds that the trial court incorrectly read the indictments to the prospective jurors. He now claims that the trial court's denial of this motion was error. G.S. 15A-1221(b) provides:

> At no time during the selection of the jury or during the trial may any person read the indictment to the prospective jurors or to the jury.

Defendant's objection is apparently addressed to the following portion of the trial court's opening remarks:

> Mr. Shelton is charged in 79CRS52439 with on or about the 11th day of December, 1979, with robbery of John Wade Swaim of $150.00 in good and lawful money of the United States with a dangerous weapon, to-wit, a metal-based gooseneck desk lamp with a metal shade.
>
> . . .
>
> In 79CRS52443, the defendant, James W. Shelton, is charged with assault with a deadly weapon inflicting serious bodily injury on John Wade Swaim, on Wade Swaim, with a metal-based gooseneck type lamp with a metal shade on the 11th day of December, 1979, in violation of General Statutes 14-32(b) . . . .

G.S. 15A-1213 provides:

> Prior to selection of jurors, the judge must identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense . . . The judge may not read the pleadings to the jury.

The purpose of this section is to avoid giving jurors a distorted view of the case through a reading of the stilted language contain-

ed in the indictments. *State v. Laughinghouse,* 39 N.C. App. 655, 251 S.E. 2d 667, *cert. denied,* 297 N.C. 615, 257 S.E. 2d 438 (1979). In *State v. McNeil,* 47 N.C. App. 30, 266 S.E. 2d 824, *cert. denied,* 301 N.C. 102, 273 S.E. 2d 306-07 (1980), we held that the trial court could, as directed by the statute set out above, refer to and summarize the indictments when explaining to the jury the circumstances under which the defendant was being tried. Similarly, in preparation for the trial of appellant's case the trial court summarized the charges from the indictments as required by G.S. 15A-1213, but did not repeat the indictment verbatim. We find no error.

[7] Appellant next contends that the trial court committed prejudicial error by denying his motion to quash the petit jury on the basis of the prosecution's alleged discrimination against the selection of blacks. Appellant alleged in his motion to quash that eight of the state's eleven challenges were of black jurors and the petit jury was all white.

"If the motion to quash alleges racial discrimination in the composition of the jury, the burden is upon the defendant to establish it. (Citations omitted.)" *State v. Spencer,* 276 N.C. 535, 539, 173 S.E. 2d 765, 768 (1970). "A person has no right to be indicted or tried by a jury of his own race or even to have a representative of his own race on the jury. He does have the constitutional right to be tried by a jury from which members of his own race have not been systematically and arbitrarily excluded. (Citations omitted.)" *State v. Cornell,* 281 N.C. 20, 32, 187 S.E. 2d 768, 775 (1972).

Appellant has failed to make out a case of arbitrary or systematic exclusion of blacks from the jury. To do this appellant must show that the prosecutor systematically used peremptory challenges to exclude blacks over a period of time, not only in this one instance. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. 2d 759 (1965); *State v. Alford,* 289 N.C. 372, 222 S.E. 2d 222, *vacated in part,* 429 U.S. 809, 97 S.Ct. 46, 50 L.Ed. 2d 69 (1976). The record discloses no evidence that this prosecutor had previously followed a practice of excluding blacks from juries.

Appellant, however, contends that the burden of proof of jury discrimination as set out in *Alford,* supra, is unduly burdensome and impossible adequately to rebut. It is not within our pur-

view to discard the rule set out by our Supreme Court in *Alford*, supra. A similar method of review was approved by the Supreme Court of the United States in *Swain*, supra, which our Supreme Court followed in *Alford*, supra, and with which we are in total agreement. This assignment of error is overruled.

[8] Appellant made a pretrial motion to suppress an in-court identification of himself by the victim of the alleged robbery and assault, Wade Swaim, on the ground that it would be tainted by an impermissibly suggestive pretrial identification procedure. Before trial the trial court conducted a *voir dire* with regard to this matter, hearing the testimony of several witnesses, which resulted in its denial of appellant's motion. Appellant maintains that the denial of his motion to suppress was prejudicial error.

An in-court identification by a witness who was involved in an illegal pretrial confrontation must be excluded unless it is first determined by the trial court after considering clear and convincing evidence that the in-court identification was of independent origin and, thus, not tainted by the unduly suggestive pretrial identification procedure. *State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *modified*, 428 U.S. 902, 96 S.Ct. 3202, 49 L.Ed. 2d 1205 (1976). An incompetent pretrial identification by a certain witness does not automatically render a subsequent in-court identification by the same witness incompetent also. In *State v. Accor* and *State v. Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970), the Supreme Court stated that, "[t]he admissibility of the in-court identifications depended upon whether the State was able to satisfy the court 'by clear and convincing evidence,' *United States v. Wade*, supra at 239, 18 L.Ed. 2d at 1164, 87 S.Ct. at 1939, that the in-court identifications were of independent origin, that is, based on observations made at the scene of the burglary and untainted by any illegality underlying the photographic identifications." 277 N.C. at 84, 175 S.E. 2d at 595.

In the case *sub judice* the trial court, after hearing extensive evidence on voir dire, found that Mr. Swaim's "identification in court . . . was based solely upon his observation of the two defendants, Gaither and Shelton, for about three minutes immediately prior to the time that he was struck on the head, and is completely free and independent of his observation of them or

observation of them later." The evidence presented on *voir dire* clearly supports the court's findings.

In *State v. Henderson*, supra, the Court adopted factors to be considered in evaluating the likelihood of irreparable mistaken identification. Those include:

> (1) The opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

285 N.C. at 12-13, 203 S.E. 2d at 18-19. The evidence in this case must be considered in light of these factors.

Mr. Swaim made two pretrial identifications of appellant. The first occurred when the police apprehended appellant fleeing from the scene of the robbery and returned him there in handcuffs. The second occurred on the day following the robbery and assault when the police showed Mr. Swaim five pictures of appellant and his codefendants. The evidence with regard to Mr. Swaim's opportunity to observe appellant at the time of the alleged crime tended to show the following: Appellant entered Mr. Swaim's shop and "milled around" near the victim's workbench. Appellant moved to Mr. Swaim's left and "cold-cocked" him in the head. Appellant and defendant Gaither then continued to beat up their victim. Mr. Swaim testified:

> The defendants stayed in my store approximately five minutes and were not wearing anything over their faces or heads. The lighting was good and I had no trouble seeing their faces. I gave them a good look and all this occurred within a 21 foot width of the store. There is no doubt in my mind that Mr. Shelton and Mr. Gaither are the ones that come into the store. . . . When the defendants came into the store I recognized them and I will recognize them from now on. . . ."

Mr. Swaim stated on cross-examination that he got a three or four minute look at appellant and Gaither. He testified that the police brought appellant back into his store for him to identify at

"approximately 4:30". This was about one half hour after the incident occurred.

This and other evidence clearly shows that the trial court's finding that Mr. Swaim's in-court identification of appellant as one of the perpetrators of these crimes was of independent origin from and untainted by the two pretrial confrontations was amply supported by competent evidence. Hence, these findings are conclusive. Consequently, we find that the trial court correctly denied appellant's motion to suppress.

[9] During the course of the trial the state attempted to establish that during the fracas appellant struck Mr. Swaim with a lamp, knocking him out. This was essential to the state's proof of the charge of assault with a deadly weapon. State's witness David Hedgecock, a Forensic Serologist with the S.B.I., was asked to compare a blood sample taken from Mr. Swaim with a residue of blood that was found on the lamp. Appellant objected to the admission of Mr. Hedgecock's testimony as to what sort of bloodstain he found upon the lamp on the ground that there had been an insufficient chain of custody established for the lamp. The trial court allowed Mr. Hedgecock to testify as to his findings despite appellant's objections. Appellant now contends that the trial court erred in receiving Mr. Hedgecock's testimony with regard to the lamp and the matching of blood samples prior to the establishment of a chain of custody.

Before Mr. Hedgecock was allowed to testify before the jury it was established through the testimony of Mr. Swaim and an employee of the police department, Bobby Thompson, that from the time the incident occurred on 11 December until 18 December the lamp was located in the locked repair store. Mr. Swaim testified that a police officer came and got the lamp from the store on 18 December. Mr. Thompson testified that he unlocked the evidence room at the police department on 18 December and Agent Pennica took the lamp therefrom to have the bloodstains tested. Appellant argued at trial that the chain of custody was broken from the time the lamp left Mr. Swaim's custody at the repair store until the time it was taken from the evidence room at the police department to be tested. Mr. Hedgecock then testified that the analysis of the bloodstains on the lamp showed that they were consistent with the victim's blood, but inconsistent with the

appellant's. Subsequently, during the trial Patrolman Ricky Hughes completed the gap in the chain of custody by testifying that he picked up the lamp from Mr. Swaim's store on 18 December and took it straight to the police station and locked it in the evidence room.

In this instance we find no error in the trial court's allowing Mr. Hedgecock to state his findings for the jury before the chain of custody with regard to the lamp had been completely shown. The order of the presentation of the evidence is within the discretion of the trial court. 1 Stansbury, N. C. Evidence, § 24 (Brandis rev. 1973). The trial court may permit the introduction of evidence that depends for its admissibility upon some preliminary showing which has not yet been made upon counsel's assurance that such showing will be made later. *Brown v. Neal*, 283 N.C. 604, 197 S.E. 2d 505 (1973); *State v. Duncan*, 282 N.C. 412, 193 S.E. 2d 65 (1972); 1 Stansbury, N. C. Evidence, § 24 (Brandis rev. 1973). In this case the state called Mr. Pennica and Mr. Hedgecock to testify as its first witnesses. The state specifically asked the trial court to allow these two witnesses to testify out of order, because the jury selection process had taken an inordinate amount of time, and both the witnesses were S.B.I. employees and were supposed to be in other counties on the following day. The court agreed to the state's request and overruled appellant's objection. We do not think the trial judge's action amounted to an abuse of his discretion. A complete chain of custody for the lamp was shown by Mr. Hughes's subsequent testimony.

[10] Appellant argues that the trial court erred in denying his motion to dismiss with regard to the charge of assault with a deadly weapon. He submits that the evidence was insufficient to show that a deadly weapon was utilized in the assault. He bases this contention on his argument that the evidence presented showing that the lamp was used in the assault was only "opinion evidence" and "supposition". Mr. Swaim was unsure as to whether he was actually ever assaulted with an object.

The question for the trial court on a motion to dismiss is whether, upon consideration of the evidence in the light most favorable to the state, there is a reasonable basis upon which the jury might find that the crime charged has been committed and the defendant was a perpetrator of the crime. *State v. Thomas*,

292 N.C. 527, 234 S.E. 2d 615 (1977); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). If there is any competent evidence to support the allegations of the indictment the motion to dismiss is properly denied. *State v. Barrow*, 292 N.C. 227, 232 S.E. 2d 693 (1977); *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974). In this case the state could not produce any direct evidence that appellant assaulted Mr. Swaim with the lamp. However, it did present ample circumstantial evidence tending to prove its contention. When the motion to dismiss questions the sufficiency of circumstantial evidence, the court must determine whether a reasonable inference of the defendant's guilt could be drawn from the circumstances so that the case may be sent to the jury. *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972); *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965); *State v. Soloman*, 24 N.C. App. 527, 211 S.E. 2d 478 (1975). A reasonable inference that appellant hit Mr. Swaim with the lamp could be drawn from the evidence admitted. Mr. Swaim testified that appellant and defendant Gaither were beating him up when he received a "terrific blow to the head" which knocked him out. When he regained consciousness Mr. Swaim saw the bloodied lamp lying at his feet. He testified that the lamp had been directly beside appellant when appellant was standing next to him. The evidence of the blood comparisons made by the S.B.I. showed that the blood on the lamp was consistent with that of the victim and inconsistent with defendant's. That evidence lends further support to the allegation that appellant assaulted Mr. Swaim with the lamp. This is sufficient evidence to create a reasonable inference that appellant struck Mr. Swaim on the head with the lamp.

Furthermore, we think that appellant's argument that this evidence is not circumstantial evidence, but mere supposition, is without merit. "[C]ircumstantial evidence is that which is indirectly applied by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred." 1 Stansbury, N. C. Evidence, § 76, p. 233 (Brandis rev. 1973). The pertinent evidence summarized above fits squarely within this definition. Thus, for these reasons, we think the trial court correctly denied appellant's motion to dismiss.

[11] State's exhibit No. 11 consists of a ball peen hammer which was in the store at the time of the assault and robbery. The trial court allowed this hammer to be introduced into evidence over

appellant's objection. Appellant claims on appeal that this hammer was erroneously allowed into evidence, because it was irrelevant and it tended to inflame the jury unnecessarily.

"[E]vidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." 1 Stansbury, N. C. Evidence, § 77, p. 234 (Brandis rev. 1973). In this case there was an issue as to whether Mr. Swaim was assaulted with a deadly weapon. The evidence was unclear as to what sort of weapon, if any, was used to knock out the victim. The circumstantial evidence did strongly infer that Mr. Swaim was hit with a metal lamp. However, the jury could possibly have inferred from the evidence that the victim was struck with the hammer rather than the lamp. Mr. Swaim testified:

> The Ball-pen [sic] hammer had a hair on it and I gave it to the S.B.I. agent. I do not know whether I was hit with this hammer. The ball-pen [sic] hammer marked State's Exhibit No. 11 was the hammer that I had in my shop.

The jury might possibly have inferred from all of the evidence that appellant actually struck Mr. Swaim with the ball peen hammer rather than the lamp. Therefore, we think this hammer did have some relevancy to the case, and the trial court properly overruled appellant's objection to its admission.

[12] At the conclusion of the state's presentation of its evidence defendants Gaither and Jackson entered pleas of guilty pursuant to plea bargains with the state. Following the entry of the pleas, appellant put on his evidence, which consisted of his own testimony. At the conclusion of appellant's testimony the defense stated that there would be no further evidence for the appellant and rested its case. Later, appellant asked the Court to reopen his case so that he might call defendant, Gaither, to testify on his behalf. After hearing the arguments of counsel and Gaither's statement that he did not wish to testify, the trial court refused to allow appellant to reopen his case.

Appellant maintains that the trial court's refusal to reopen the case so that he could call Gaither was prejudicial error. He alleges that in so ruling the trial court abused its discretion, denied appellant his constitutional right to call witnesses and prepare his own defense, denied his constitutional right of con-

frontation and due process, and violated the North Carolina rules regarding fair and open plea bargaining.

In his brief appellant acknowledges that normally the decision to reopen a case and hear further evidence is within the trial court's discretion. *See State v. Person,* 298 N.C. 765, 259 S.E. 2d 867 (1979); G.S. 15A-1226(b). However, he argues that his motion to reopen the case was based on his federal and state constitutional rights to present evidence and confront his accusers. Therefore, his motion to reopen the case was a question of law and not at the court's discretion. Appellant arrives at his contention by analogizing his case with others in which the North Carolina Supreme Court has held that when a motion is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not discretion, thus, the trial court's decision on the motion is reviewable. *See State v. Smathers,* 287 N.C. 226, 214 S.E. 2d 112 (1975); *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296, *cert. denied,* 409 U.S. 1047, 93 S.Ct. 537, 34 L.Ed. 2d 499 (1972); *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970). All three of these cases involved the propriety of a trial court's ruling upon a motion for continuance. The Supreme Court held in each of these cases that the motion to continue would be considered a question of law because it was based upon the defendant's constitutional rights.

Appellant's argument is fundamentally flawed. Although constitutional rights may have been the bases of the motions in the authorities he cites, they were not at issue in his own case. Appellant submits that his motion to reopen his case was based upon his Sixth and Fourteenth Amendment rights under the Federal Constitution and his rights under Article I, Sec. 23 of the Constitution of North Carolina. However, under the facts and circumstances of this particular case we do not think that appellant's motion was based upon any constitutional right guaranteed by the due process clause of the Fourteenth Amendment. Specifically, appellant did not have the right pursuant to due process to have his case reopened.

The fundamental requirement of due process is an opportunity to be heard upon such notice and in such proceedings as are adequate to protect the constitutional right for which the constitutional protection is invoked. *Anderson National Bank v.*

*Luckett,* 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944). In this case appellant asserts the denial of his Sixth Amendment right of confrontation. The right of confrontation includes the opportunity fairly to present one's own defense. *State v. Lane,* 258 N.C. 349, 128 S.E. 2d 389 (1962). However, as the Supreme Court said in *State v. Graves,* 251 N.C. 550, 112 S.E. 2d 85 (1960):

> We do not suggest that an accused may be less than diligent in his own behalf in preparing for trial. He may not place the burden on the officers of the law and the court to see that he procures the attendance of witnesses and makes preparation for his defense. But the officers and court have a duty to see that he has opportunity for so doing.

251 N.C. at 558, 112 S.E. 2d at 92. In the case *sub judice* appellant was given ample opportunity to present evidence in his defense. Defendant Gaither pled guilty at the close of the state's evidence. The record reveals that he was available and could have been called by appellant at any time before appellant rested. Under these circumstances we do not think that appellant had a due process right of confrontation after he voluntarily rested his case.

Without a constitutional right upon which to base his motion to reopen his case, defendant's motion is addressed to the trial judge's discretion and we will not review his decision on appeal. We have also rendered specious appellant's argument as to the binding effect of the plea bargain on defendant Gaither.

Having considered appellant's remaining arguments, and finding no incidence of prejudicial error involved in any of them, we conclude that appellant received a fair trial free from prejudicial error.

No error.

Judges MARTIN (Harry C.) and HILL concur.