STATE OF NORTH CAROLINA v. JAMES ROBERT PRUITT

No. 8818SC934

(Filed 20 June 1989)

1. **Criminal Law § 34.8; Rape and Allied Offenses § 4.1— prior sexual conduct by defendant—admissibility to show modus operandi**

In a prosecution for rape and sexual offenses, testimony by two of defendant's former lovers about defendant's past sexual conduct was admissible to prove defendant's modus operandi, plan, motive and intent where the testimony showed strikingly similar behavior by defendant toward the witnesses and the victim in that defendant befriended all three women, lured them into a dating relationship, and, after gaining their trust, used physical violence or the threat of a deadly weapon

to force each woman to engage in vaginal intercourse, anal intercourse, cunnilingus and fellatio. Furthermore, defendant failed to show that this evidence should have been excluded under the Rule 403 balancing test. N.C.G.S. § 8C-1, Rules 404(b), 403.

2. **Criminal Law § 89.3— sexual attack—prior consistent statement—admissibility to corroborate witness**

A detective's testimony relating a prior consistent statement by a State's witness concerning defendant's sexual attack on her was properly admitted to corroborate the witness's in-court testimony about the sexual attack.

3. **Rape and Allied Offenses § 6— first degree rape—first degree sexual offense—employment or display of deadly weapon—sufficiency of instructions**

The trial court's instruction on employment or display of a deadly weapon as a necessary element of first degree rape and first degree sexual offense was sufficient, although the instruction did not emphasize the victim's awareness of the weapon, where it made clear that the State was required to prove that the weapon was displayed in some fashion, and where the victim's testimony showed that defendant threatened her with a knife and that the knife remained on a bedside table, within eight feet of defendant, throughout the attack.

4. **Criminal Law § 102.8— jury argument—failure to present evidence of consent—no comment on defendant's failure to testify**

The prosecutor's jury argument in a rape and sexual offense case concerning defendant's failure to present evidence to support his contention that the victim consented to sexual acts with him did not constitute an improper comment on defendant's failure to testify.

5. **Criminal Law § 111.1— court's explanation of charges—no improper reading of indictment**

The trial court in a prosecution for first degree rape and first degree sexual offenses did not err in presenting the charges to the jury because the court used phrases from the indictments such as "did ravish and carnally know" and "willfully and feloniously," since the trial court may refer to and summarize the indictments when explaining the charges against

defendant and the circumstances under which defendant is being tried, and the record shows that the trial court did not read the entire indictment to the jury.

### 6. Constitutional Law § 81 — three consecutive life sentences — no cruel and unusual punishment

The imposition of three consecutive life sentences upon defendant for a rape and three first degree sexual offenses did not constitute cruel and unusual punishment.

APPEAL by defendant from *Mills (F. Fetzer), Judge.* Judgment entered 11 March 1988 in Superior Court, GUILFORD County. Heard in the Court of Appeals 22 March 1989.

Defendant was indicted for one count of rape and three counts of first degree sexual offense.

At trial the victim testified that on or about 4 August 1987 she met defendant for the first time at a convenience store in Kernersville. At that time she gave defendant her telephone number. After the initial meeting she and defendant went out together several times. These outings included going to defendant's motel room where they would drink, watch TV, and kiss.

On 8 August 1987, defendant picked her up at work and took her by her parents' house so she could change clothes. Then she and defendant rode around Kernersville for a while. They eventually went to defendant's motel room, arriving there at approximately 12:30 A.M. They had a mixed drink and watched TV for a while. The victim noticed defendant was unusually quiet that evening and asked if he had been drinking. Defendant told her that he had drunk a fifth of liquor before picking her up at work. After this admission, defendant became extremely quiet until he suddenly reached out and grabbed the victim's jumpsuit by the throat and ripped it all the way off, ripping the bra and panties that she wore underneath as well. When the victim pleaded with defendant to let her go, he started hitting her and telling her that if she didn't "shut-up" he would kill her with a knife. When defendant threatened her with the knife, the victim saw the knife lying on a nightstand near the bed on which they were then lying.

The victim testified that defendant forced vaginal intercourse, anal intercourse, fellatio, and cunnilingus on her. She also testified that defendant demanded that she urinate on him and threatened

STATE v. PRUITT

[94 N.C. App. 261 (1989)]

to stab her when she said that she could not. After performing these sex acts on the victim, defendant stood beside her and, while holding on to her hair, masturbated to ejaculate. The victim testified that to her knowledge defendant did not "climax" until he masturbated. Throughout this time the knife remained on the nightstand at a distance of between two and eight feet from defendant.

After completing these sex acts, defendant forced the victim to drink liquor straight from the bottle. He told her he was going to kill her and dump her in the river so that she could not tell the police what he had done.

The victim testified that defendant then threw her back down on the bed and started having vaginal intercourse with her again. He stopped and went over to the door when he heard someone yelling outside. Defendant opened the door and started yelling at someone down in the parking lot. When defendant moved to the side of the door, the victim jumped off the bed and ran from the motel room even though she was naked.

The victim ran to the motel office and beat on the door. The desk clerk at the motel opened the office door and the victim told her that she had been raped by the man staying in room 331. The desk clerk then called the police and found the victim some clothes to cover herself. The desk clerk confirmed from the motel records that room 331 was registered to a "James Pruitt." The police searched the room and found the victim's torn clothes and her handbag, but did not find defendant.

Defendant presented no evidence at trial. The jury convicted defendant of rape and of three counts of first degree sexual offense. Defendant was sentenced to three consecutive life sentences. From these convictions and sentences, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General L. Darlene Graham, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

PARKER, Judge.

Defendant has grouped his numerous assignments of error into six basic arguments. First, defendant contends that the trial court erred in allowing the State's witnesses to attest to defend-

ant's past sexual conduct. Second, defendant argues that the trial court erred in admitting testimony of one witness to corroborate another witness's testimony about defendant's past sexual conduct. Third, the defendant urges this Court to find error in the trial judge's jury instruction on possession of a deadly weapon. Fourth, the defendant asserts that the court committed plain error in allowing the prosecutor to argue to the jury that defendant had failed to put on evidence of consent. Next, defendant contends that the trial court erred in presenting the charges against the defendant to the jury. Finally, defendant argues that the sentences imposed against defendant are unconstitutional because they are cruel and unusual punishment. We address separately each of defendant's contentions.

[1] Defendant argues that he was denied a fundamentally fair trial because the court admitted evidence in violation of G.S. 8C-1, Rule 404 when it allowed two of the State's witnesses, defendant's former lovers, to testify to defendant's past sexual conduct. The State contends that this evidence was admissible under G.S. 8C-1, Rule 404(b) and under *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954), as evidence tending to show defendant's *modus operandi*, motive, intent, preparation and plan.

At trial State's witness D. B. testified that she met defendant in mid-January 1986 and consented to sexual intercourse on 28 January 1986. On 4 February 1986, she and defendant went to a motel and engaged in consensual sexual intercourse including oral sex. On this occasion defendant had been drinking. While talking with defendant after intercourse, D. B. called defendant Roger instead of Robert. Defendant became upset and called D. B. names. D. B. started to dress and leave. Defendant then allegedly ripped off her underwear, began beating and kicking her, pulled out a knife and threatened to kill her with the knife. Defendant then forced D. B. to engage in anal intercourse and fellatio, and demanded that she urinate on him. When D. B. refused, defendant went to the bathroom and D. B. was able to escape to the motel office.

P. S., a second State's witness, testified that she met defendant in January 1987 and that he moved in with her at the end of March 1987. Thereafter they entered into a consensual sexual relationship which continued until early May 1987. On 13 May 1987, defendant and P. S. were riding in his car when defendant suddenly hit her. Defendant drove his car into some woods and continued

to beat P. S. When he stopped beating her, he allegedly forced her to engage in anal intercourse, fellatio, cunnilingus, and vaginal intercourse. Thereafter, P. S. remained with defendant in the woods until it started to get dark. Defendant then drove P. S. to the emergency room and left.

General Statute 8C-1, Rule 404(b) prohibits the introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he acted in conformity therewith on a particular occasion. Such evidence is admissible, however, for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. Our Supreme Court has ruled that the list of exceptions contained in Rule 404(b) is not exclusive and that extrinsic evidence of conduct is admissible if "relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried." *State v. Morgan*, 315 N.C. 626, 637, 340 S.E. 2d 84, 91 (1986). When the incidents are offered for a proper purpose, the ultimate test of admissibility is "whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *State v. Boyd*, 321 N.C. 574, 577, 364 S.E. 2d 118, 119 (1988) (citing *State v. Cotton*, 318 N.C. 663, 665, 351 S.E. 2d 277, 278-79 (1987)).

Our courts have been liberal in admitting evidence of similar sexual offenses under the exceptions listed above. *State v. Greene*, 294 N.C. 418, 423, 241 S.E. 2d 662, 665 (1978). In *State v. Bagley*, 321 N.C. 201, 362 S.E. 2d 244, *cert. denied*, --- U.S. ---, 108 S.Ct. 1598, 99 L.Ed. 2d 912 (1987), the defendant was charged with first degree sexual offense for allegedly forcing the victim to submit to cunnilingus by threatening her with a knife. The North Carolina Supreme Court held that testimony from another woman that defendant had pinned her to the ground and threatened her with a knife while he licked her and attempted to perform cunnilingus was relevant and admissible to prove defendant's *modus operandi*, motive, intent, preparation and plan. *Id.* at 207-208, 362 S.E. 2d at 248. In *State v. Morrison*, 85 N.C. App. 511, 355 S.E. 2d 182, *appeal dismissed and disc. rev. denied*, 320 N.C. 796, 361 S.E. 2d 84 (1987), defendant was charged with rape which he allegedly committed after luring the victim to his apartment on the pretext of changing clothes before they went out on their date. This Court held that testimony from another woman that defendant attempted

to rape her after luring her to his apartment on the pretext of changing clothes before they went out on a date was relevant and admissible to show a common scheme or plan to commit the offense with which defendant was charged. *Id.* at 514, 355 S.E. 2d at 184-85.

In the present case we conclude that the strikingly similar behavior attributed to defendant by all three women — befriending the women; luring them into a dating relationship; and then, after gaining their trust, using physical violence and/or the threat of a deadly weapon to force each woman to engage in vaginal intercourse, anal intercourse, cunnilingus, and fellatio — rendered the testimony of defendant's former lovers, D. B. and P. S., admissible to prove defendant's *modus operandi*, plan, motive and intent.

Finally, defendant has failed to show that the evidence should have been excluded under the Rule 403 balancing test. Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court, and it will not be reviewed absent a showing of abuse of that discretion. *State v. Cotton*, 318 N.C. at 668, 351 S.E. 2d at 280; *State v. Mason*, 315 N.C. 724, 731, 340 S.E. 2d 430, 435 (1986). In the present case there was no abuse of discretion. The trial judge admitted the evidence of prior misconduct for a limited purpose and specifically instructed the jury before their deliberations that they could consider this evidence only for the limited purposes of considering (i) whether or not the defendant had the necessary intent required to commit the crimes charged and (ii) whether or not there existed in the mind of the defendant a plan, scheme, system or design involving the crimes charged in these cases. Moreover, the evidence was not grossly shocking or so cumulative as to mislead the jury away from the offenses for which defendant was being tried. *State v. Bagley*, 321 N.C. at 208, 362 S.E. 2d at 248.

[2]   Defendant's second argument is that the trial court erred when it admitted the testimony of Detective Mary Ann Harper to corroborate the testimony of D. B. Ms. Harper was the police detective who investigated D. B.'s charges against defendant after the alleged sexual assault in 1986. Ms. Harper's testimony, in fact, was limited to the description of events given to her by D. B. with regard to the alleged assault on D. B. by defendant. The trial court admitted this evidence solely for the purpose of corroborating D. B.'s testimony.

The North Carolina Supreme Court has permitted prior consistent statements of a witness as corroborative evidence even when the witness has not been impeached. *State v. Martin*, 309 N.C. 465, 476, 308 S.E. 2d 277, 284 (1983). Since Ms. Harper's testimony was limited to the prior consistent statement made by D. B. regarding defendant's sexual attack, we conclude that this testimony was properly admitted to corroborate D. B.'s in-court statement. *See also State v. Riddle*, 316 N.C. 152, 340 S.E. 2d 75 (1986); *State v. Ramey*, 318 N.C. 457, 349 S.E. 2d 566 (1986).

[3] Next, defendant argues that the trial court erred when instructing the jury on "use of a deadly weapon" as a necessary element of first degree rape or first degree sexual offense. The judge's instruction to the jury on use of a deadly weapon was as follows:

And fourth, that the defendant employed or displayed a dangerous or deadly weapon. A dangerous or deadly weapon is a weapon which is likely to cause death or serious bodily injury. The State is not required to prove that a dangerous or deadly weapon was used in a particular manner. A dangerous or deadly weapon is employed when a person has such in his possession at the time of the alleged crime.

The North Carolina Supreme Court has held that the State is not required to prove "that a dangerous or deadly weapon was used in a particular manner in order to sustain a conviction for first degree rape." *State v. Langford*, 319 N.C. 340, 344, 354 S.E. 2d 523, 525 (1987). The State is only required to show that defendant possessed a deadly or dangerous weapon at the time of the rape and that the victim was aware of the presence of the weapon, because it had been displayed or employed. *See id.* Although the trial court's instruction did not emphasize the victim's awareness of the weapon, the instruction made clear that the State was required to prove that the weapon was displayed in some fashion. The victim's testimony indicates that not only did defendant have a knife in his possession during his sexual assault on her, defendant threatened her with this knife, and the knife remained on the bedside table, within eight feet of defendant, throughout the attack. This assignment of error is, therefore, overruled.

[4] Fourth, defendant contends that the trial court erred in allowing the prosecutor to argue to the jury that defendant had failed to put on evidence of consent because, in effect, counsel was commenting on defendant's failure to take the stand. We note at the

outset that defendant did not object to this argument at trial; therefore, Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure bars the assignment of error. Defendant also contends, however, that the judge committed plain error by failing to intervene *ex mero motu.*

Defendant objects to the following portion of the prosecutor's argument:

> [Defendant's Counsel] indicated that the main thing you would have to decide in this case was their contention that [the victim] had consented to all of these sexual acts that you've heard, that she was a willing and voluntary participant with Mr. Pruitt in all of these acts. He said he'd have evidence. Well, the only evidence that you've had in this trial of consent from the witness chair is evidence of no consent or lack of consent.

This argument is merely a reference to the failure of defendant to put on any evidence. Such an argument is permissible. *See State v. Griffin,* 308 N.C. 303, 314, 302 S.E. 2d 447, 455 (1983); *State v. Tilley,* 292 N.C. 132, 143, 232 S.E. 2d 433, 441 (1977). The defendant contends that this is an improper reference to defendant's failure to testify because only the defendant could have testified to the victim's consent. We note that even where the defendant has chosen not to testify and the prosecution, in closing, has explicitly stated "[t]hat's something no one here can answer except the defendant," the North Carolina Supreme Court has held that the trial judge was not required to intervene *ex mero motu. State v. Wilson,* 311 N.C. 117, 130, 316 S.E. 2d 46, 54-55 (1984). Moreover, any prejudice which might have resulted from the prosecutor's remarks was cured by the following instruction contained in the jury charge:

> The defendant in this case has not testified. The law of the State of North Carolina gives him this privilege. This same law also assures him that his decision not to testify creates no presumption against him. Therefore, his silence is not to influence your decision in anyway [sic].

*See id.; State v. Hopper,* 292 N.C. 580, 585-86, 234 S.E. 2d 580, 583 (1977).

**[5]** Next, defendant argues that the court erred in presenting the charges against the defendant to the jury because the court used phrases from the indictment such as "did ravish and carnally

know" and "willfully and feloniously." The trial court may refer to and summarize the indictments when explaining the charges against defendant and the circumstances under which the defendant is being tried. *State v. Leggett*, 305 N.C. 213, 217-18, 287 S.E. 2d 832, 835-36 (1982); *State v. Shelton*, 53 N.C. App. 632, 639-40, 281 S.E. 2d 684, 690 (1981), *disc. rev. denied and appeal dismissed*, 305 N.C. 306, 290 S.E. 2d 707 (1982); *State v. Laughinghouse*, 39 N.C. App. 655, 657-58, 251 S.E. 2d 667, 668-69, *cert. denied*, 297 N.C. 615, 257 S.E. 2d 438 (1979). The record shows that the trial court did not read the entire indictment to the jury. Therefore, defendant's assignment of error is without merit.

[6]  Finally, defendant asserts that imposing three consecutive life sentences against defendant constitutes cruel and unusual punishment. The punishment imposed for each conviction was within the statutory limits. The North Carolina Supreme Court has consistently held that a sentence which is within the maximum authorized by statute is not cruel or unusual punishment. *See State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E. 2d 436, 441 (1983); *State v. Mitchell*, 283 N.C. 462, 471, 196 S.E. 2d 736, 742 (1973). Accordingly, this assignment of error is overruled.

No error.

Judges PHILLIPS and COZORT concur.